UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | Criminal No: 3:17-CR-00155-L |
| JAMSHID NORYIAN, et al. | § § | |

**DEFENDANTS' JOINT RESPONSE IN OPPOSITION TO THE UNITED STATES OF AMERICA'S MOTIONS IN LIMINE**

Defendants Jamshid "James" Noryian (1), Dehshid Nourian (2), and Chris Rydberg (3) collectively ("the Defendants") file this Response to the United States of America's Motions in Limine Nos. 2 ("Good Conduct"), 3 ("Jury Nullification), 4 ("Decision not to Charge"), 5 ("Failure to Call a Witness"), and 7 ("Cross-Examination of Cooperating Witness") (Dkt. 391). Defendant Nourian reserves the right to adopt any oppositions filed by other parties as to Motions in Limine Nos. 1, 4, 5, 6, and 7.

I.  **Motion in Limine No. 2— "Good Conduct"**

The Government moves to exclude evidence of "specific acts of good conduct, including evidence of: (1) legitimate billing or prescriptions by the defendants; and (2) the provision of legitimate services by the defendant." *See* Dkt. 391 at 8. But such broad categories of evidence are not examples of "specific acts of good conduct" considered inadmissible under Rules 401 or 405(b). *See* Dkt. 391 at 8. Indeed, Nourian does not intend to present evidence of "specific acts of good conduct" that are irrelevant to the charges in the Superseding Indictment and solely designed to suggest Nourian does not possess characteristics capable of committing "noncriminal" conduct.

Rather than narrowly defining instances of inadmissible "good conduct," the Government seeks to exclude overly broad categories of evidence related to legitimate billings or prescriptions that may, in fact, be relevant to rebutting the Government's evidence at trial. By seeking to broadly exclude this evidence, the Government is prematurely handicapping Nourian's ability to present rebuttal evidence as to certain prescriptions submitted to the pharmacies which the Government may claim are relevant to proving the Conspiracy to Commit Health Care Fraud charge in Count 1. *See United States v. Lowery*, 135 F.3d 957, 959 (5th Cir. 1998) (granting an overly broad motion in limine may have the effect of preventing a defendant from properly presenting a defense theory to the extent necessary for a fair trial).

The Government has not previewed in advance of trial which specific prescriptions it intends to show the jury with respect to Count 1. Indeed, the Superseding Indictment claims that as part of the conspiracy, over 17,000 prescriptions were fraudulently submitted to the pharmacies at issue—yet the Government has not identified which of those prescriptions they intend to present to the jury. *See* Dkt. 162 (Superseding Indictment, ¶¶ 30-56). Nourian anticipates that the Government will argue or insinuate that a majority of, if not all, the prescriptions sent to the pharmacies were illegitimate, and that these pharmacies were rife with fraud—not just that there were a discrete number of fraudulent prescriptions represented by the substantive healthcare fraud charges in Counts 2-9. Therefore, it would be unfair and prejudicial to rule in advance of trial that Defendant Nourian may not present any evidence at all regarding the legitimacy of certain prescriptions, irrespective of what evidence the Government may ultimately present to the jury.

By way of example, in the Government's document production, the Government produced a handful of prescriptions that Defendant Nourian herself wrote for patients of her dental practice, and which were filled by Ability Pharmacy. Although Nourian is not charged in the Superseding

Indictment with writing fraudulent prescriptions—and therefore these specific prescriptions are irrelevant and prejudicial under Rule 401 and 403—in an abundance of caution, Nourian listed the relevant patient files on her Exhibit List to use only in rebuttal to show she believed the prescriptions were medically needed and thus were legitimate. *See* Dkt. 370-1 (Leyla Nourian's Trial Exhibit List, Exs. 32-38). During the parties' meet and confer regarding objections, the Government objected to these patient files on relevance grounds, and counsel explained that the exhibits would not be needed if the Government would agree they would not present these handful of prescriptions to the jury. The Government did not subsequently agree and proceeded with objecting to these exhibits in its filing. *See* Dkt. 405 (Government's Objections to Leyla Nourian's Exhibits).

This motion in limine, as worded, would preclude Nourian from showing these specific patient files if the Government attempts to use these prescriptions to infer Nourian's guilt or participation in the alleged conspiracy. *See United States v. Martinez*, 921 F.3d 452, 474 (5th Cir. 2019) (patient files are admissible to show whether a prescription was written with a legitimate medical purpose and within the usual course of professional practice). This is exactly the type of relevant rebuttal evidence that is permitted under Rule 401 and not considered "good conduct" character evidence under Rule 405.

The cases the Government relies on stand for the proposition that a defendant cannot introduce evidence that is wholly irrelevant to the charges alleged, intended only as evidence of the defendant's character, and not offered for the purpose of rebutting specific evidence. For example, in *U.S. v. Jena*, 478 F. App'x 99 (5th Cir. 2012), a tax fraud case, the court excluded evidence of a wholly unrelated IRS investigation that exonerated the defendant under different circumstances—noting that investigation was not relevant to the charges alleged. And in *U.S. v.*

*Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978)*,* a conspiracy to transport stolen cars case, the Court excluded evidence regarding the defendant's legitimate purchase of other cars which were not the ones allegedly stolen. Here, Nourian only intends to offer evidence that a prescription was legitimately written if the Government makes an allegation to the contrary as to that particular prescription.

The Government points to *U.S. v. Marrero*, 904 F.2d 251 (5th Cir. 1990) for the overstated proposition that a defendant in a healthcare fraud case should be precluded from presenting any evidence of legitimate billing. In *Marrero*, the defendant was charged with a discrete number of prescriptions related to four patient-families, and attempted to introduce evidence that on other occasions, she gave free services to patients or otherwise accurately billed for services "to prove that her good character was inconsistent with criminal intent." *Id*. at 256-260. But here, Defendant Nourian does not intend to put on evidence of legitimate services or prescriptions to show her good character is inconsistent with criminal intent. Rather, she intends only to rebut evidence of specific prescriptions that the Government might point to as somehow relevant to the conspiracy to commit healthcare fraud. Unlike in *Marrero*, here, the Government has previewed they will present evidence of prescriptions outside of just the discrete number that underlie the substantive fraud counts, and it is therefore not feasible or fair to make any broad rulings in advance of trial that would handicap the defendants from presenting rebuttal evidence as to those specific prescriptions.

Additionally, Government's MIL No. 2 should not preclude Nourian from presenting evidence or otherwise arguing to the jury that she believed the pharmacies were legitimate enterprises. Through certain witnesses, counsel may elicit the suggestion that Nourian believed the pharmacies were legitimate, did not have knowledge of any wrongdoing, or otherwise had no basis to believe the pharmacies were fraudulent. This type of evidence is relevant to the issue of

4

Nourian's intent to commit fraud and whether she had a good faith belief the prescriptions submitted to and filled by the pharmacies were legitimate. Conspiracy to commit healthcare fraud "require[s] proof of knowledge and specific intent to defraud." *See, e.g., United States v. Brooks*, 681 F.3d 678, 699 (5th Cir.2012). And good faith evidence is admissible to rebut whether a defendant knowingly entered into an agreement to defraud. *See United States v. Ganji*, 880 F.3d 760, 774 (5th Cir. 2018); *United States v. Echols*, 574 F. App'x 350, 358 (5th Cir. 2014). Any evidence that Leyla acted in good faith and believed the pharmacies were legitimate operations is relevant under Rule 401; not the type of "good conduct" evidence that is barred by Rule 405; and should not be excluded by the Court pursuant to the Government's overly broad MIL No. 2.

## II.     Motion in Limine No. 3 — "Jury Nullification"

Defendant Nourian does not intend to present evidence "admitted solely to encourage nullification," which is plainly not admissible under the case law. *United States v. Penn*, 969 F.3d 450, 458 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 2526 (2021). Nourian does not intend to question witnesses about, or otherwise discuss, the negative impact on her or her family member's lives if she were convicted and will not reference sentencing.

But this motion in limine is much broader than the topic of a conviction or sentencing and does not provide any adequate or precise guidance to Defendant Nourian on what evidence or subjects to avoid. It seeks to exclude, for example, "evidence of the defendants' family or personal circumstances." *See* Dkt. 391 at 13. Such a ruling would preclude testimony or reference to one of the most glaring facts of this trial—that the defendants are family members. The relationship between the defendants is essential background for the charges and defenses in this case. Moreover, the witnesses—including Defendant Nourian should she testify—should be entitled to give brief personal background in their testimony. *Hudson Specialty Ins. Co. v. Talex Enterprises,*

5

*LLC*, 2020 WL 1318802 at *3 (S.D. Miss. Mar. 20, 2020) (in which the Court declined to grant a motion in limine to exclude evidence regarding a witness' personal circumstances, such as his family and financial background, and holding it would instead "monitor the testimony" and "sustain such objections to evidence that the Court determines to be irrelevant").

Here, the Government's motion in limine is plainly overly broad, devoid of any specific context, and premature, and gives no guidance to Defendant Nourian on the specific types of issues or topics she would be prohibited from discussing. The Court should either require the Government to substantially narrow this motion to, for example, discussing the negative consequences of a conviction and potential sentencing—or alternatively deny the motion entirely and require the Government to instead make contemporaneous objections at trial.

### III.   Motion in Limine No. 4— "Decision Not to Charge"

The Government requested two separate in-limine rulings in this section of its motion. First, it sought to exclude "any statements regarding another person not charged in the superseding indictment or whether any other individual has been or will be charged with a crime." Later, it requested a limitation on "argument by defense counsel in the form of drawing comparisons with uncharged individuals." Both of these proposed requested in-limine rulings are overly broad, vague, and include clearly permissible inquiries and arguments by Defendants.

> **a.  "Any statements regarding another person not charged in the superseding indictment or whether any other individual has been or will be charged with a crime**."

To preclude the defense from offering "any statements regarding any other person not charged in the superseding indictment or whether any other individual has been or will be charged with a crime" would impose an overbroad, unclear, and insensible restriction on Defendants' right to confront and examine witnesses for bias, motive, character, character for truthfulness, and other

6

permissible manners of impeachment. The inquiry and argument into the credibility of witnesses who may have some exposure to prosecution and who have been charged with a crime is routine. The Fifth Circuit Pattern Jury Instructions Nos. 1.15 and 1.16 (2019 ed.) specifically direct jurors to regard such witnesses with particular care and caution.

In this case, we expect the Government to call witnesses who have reached plea agreements with the Government, who have been convicted and sentenced, who have received target letters and have not been charged, and who have provided information to the Government for personal advantage or vindication. Defense counsel must be "permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *United States v. Diaz*, 637 F.3d 592, 597 (5th Cir. 2011) (citing *United States v. Hitt*, 473 F.3d 146, 156 (5th Cir.2006)).

   b. **Argument by defense counsel in the form of drawing comparisons with uncharged individuals.**

In support of its motion, the Government points the Court to *United States v. Thompson*, 253 F.3d 700 (5th Cir. 2001). In *Thompson*, the Fifth Circuit held that it was not an abuse of discretion for the district court to grant a motion in limine that precluded defense counsel from "[a]ny type of comparison during closing argument of the arguably criminal acts of immunized or uncharged witnesses to the alleged criminal acts of a Defendant." *Id*. Defense counsel in *Thompson* was precluded from arguing in closing that a defendant should be found not guilty if a witness who committed the same crimes as the defendant was not charged with those crimes because this argument would encourage jury nullification.

The scope of the above in-limine request in *Thompson* is significantly more limited than what the Government has requested. The Government's proposed in-limine ruling would preclude

7

any "argument by defense counsel in the form of drawing comparisons with uncharged individuals." First, all witnesses are uncharged individual. Second, uncharged individuals might be uncharged because they committed no crimes. The Government's limitation would include all comparisons of conduct to "uncharged individuals" with no regard for the alleged criminality (or, importantly, lack thereof). It is overbroad and would prevent defense counsel from raising permissible arguments. Defense counsel should be permitted to compare a client's lawful conduct to the lawful conduct of uncharged individuals.

### c. Selective-Prosecution

In this section of its motion, the Government cites many cases that hold that a district court should rarely interfere with the Executive Branch's decision to prosecute where defendants are seeking a dismissal for Constitutional reasons. See *United States v. Armstrong*, 517 U.S. 456 (1996) (regarding discovery issues related to a selective-prosecution claim based on equal protection); *United States v. Webster*, 162 F. 3d 308, 333 (5th Cir. 1998) (regarding a motion to dismiss based on a selective-prosecution claim based on equal protection); *United States v. Jeong*, 624 F. 3d 706, 713 (5th Cir. 2010) (regarding a motion to dismiss based on international law); *Wayte v. United States*, 470 U.S. 598, 607 (1985) (regarding a motion to dismiss based on selective-prosecution under equal protection). The reason for inclusion of this authority is unclear because none of the Defendants in this matter have filed a motion to dismiss on the basis of selective-prosecution or otherwise raised that defense. Further, none of the cases pertain to evidentiary issues in jury trials, motions in limine, or even the presentation of a selective-prosecution claim to a jury.

For these reasons, the Court should require the Government to narrow this motion or it should deny the motion and require the Government to handle this issue by making objections during trial.

## VI.      Motion in Limine No. 5—The Government's Failure to Call a Particular Witness

The Government's motion here would seek to restrict defense counsel from commenting on or asking the jury to draw a negative inference regarding the Government's decision not to call a particular witness.

"A party's failure to call available witnesses or produce evidence that would clarify or explain disputed factual issues can give rise to a presumption that the evidence, if produced, would be unfavorable to that party." *United States. v. Wilson*, 322 F.3d 353, 363 (5th Cir.2003). For the presumption to apply, the missing witness must have "some sort of connection to the party, such that one would expect that the missing witness's testimony would corroborate that party's theory of the case, such as a party's employee or attorney whose legal advice was at issue." *United States v. Santos*, 589 F.3d 759, 764 (5th Cir.2009). *See United States v. Wilson*, 322 F.3d 353 (5th Cir. 2003). Whether a jury should draw a negative inference about the Government's failure to call a witness is an issue that is properly addressed by the Court if it grants a "missing witness" instruction and instructs the jury on that presumption. *United States v. Rios*, 636 F.3d 168, 171 (5th Cir. 2011); *Santos* at 764 (5th Cir. 2009); *United States v. Chapman*, 435 F.2d 1245, 1247 (5th Cir.1970).

The in-limine ruling requested here is not tailored to a case-specific matter and can be handled by making appropriate objections at trial. II. Motion Practice D. Witness List, District Judge Sam A. Lindsay Judge-Specific Requirements, available at https://www.txnd.uscourts.gov/judge/district-judge-sam-lindsay. Should Defendants seek a "missing witness instruction," the Government will have an opportunity to object.

VII.    Motion in Limine No. 7— "Cross-examination of Cooperating Witnesses"

The government contends the defendants should be precluded from cross-examining cooperating government witnesses about how their cooperation and plea agreements affect the witnesses' potential sentencing exposure.  The government specifically contends that "[t]he defendants should not be permitted to question cooperating witnesses regarding the specific sentences ordered in their cases or the sentencing Guidelines range they faced or will face as a result of a plea agreement."  (ECF No. 391) In support of this argument, the government cites *United States v. Roussel*, 705 F.3d 184, 194-95 (5th Cir. 2013).  *Roussel* holds that a district court possesses discretion to limit defendants from cross-examining cooperating witnesses about how their plea agreements limit their potential exposure under the advisory Sentencing Guidelines.  *Id.*

This Court should deny the government's motion in limine as moot to the extent that it concerns potential cross-examination about the Sentencing Guidelines.  The defendants do not intend to ask any cooperating defendant about how their cooperation and plea agreements affect their potential sentencing exposure under the Guidelines.

However, fully consistent with other Fifth Circuit precedent interpreting the Confrontation Clause, the defendants are entitled to cross-examine the cooperating witnesses about how their cooperation and plea agreements affect both (1) the available criminal charges that were not brought against the defendants as a result of their cooperation or plea agreements; and (2) how their cooperation and plea agreements have affected the witnesses' sentencing exposure under the relevant penal statutes.  *See United States v. Cooks*, 52 F.3d 101, 104 n.13 (5th Cir. 1995); *accord United States v. Landerman*, 109 F.3d 1053, 1063 (5th Cir.1997) (discussing *Cooks*); *see also United States v. Dimora*, 843 F. Supp.2d 799, 843 (N.D. Ohio 2012) ("The Third, Fifth, and Ninth Circuits have held that a district court abuses its discretion by limiting a defendant's ability to

10

cross-examine co-conspirators about their beliefs as to the sentences they avoided by testifying. These courts hold that a defendant's Confrontation Clause right to inquire into potential [statutory] sentencing ranges, minimums or maximums, outweighs the risk of undue prejudice.") (citing *Cooks* and *Landerman*). Therefore, to the extent that the government's motion in limine seeks to prohibit such questions on cross-examination, this Court should deny the motion.

## VIII. Conclusion

For the reasons addressed herein, Defendant Nourian respectfully requests that this Court deny the Government's Motions in Limine No. 2, 3, 4, 5, and 7.

Respectfully submitted,

/s/ Jeff Kearney
Jeff Kearney
State Bar No: 11139500
Email: jkearney@kearneylawfirm.com
Catherine Stanley
State Bar No: 24110542
Email: cwirth@kearneylawfirm.com
Kearney Law Firm
One Museum Place
3100 West 7th Street, Suite 420
Fort Worth, Texas 76107
Phone: (817) 336-5600
Fax: (817) 336-5610

**COUNSEL FOR DEFENDANT JAMSHID NORYIAN (1)**

11

/s/ Michael P. Gibson
Michael P. Gibson
State Bar No. 07871500
Burleson, Pate & Gibson, L.L.P.
900 Jackson Street, Suite 330
Dallas, Texas 75202
Phone: (214) 871-4900
Fax: (214) 871-7543
Email: mgibson@bp-g.com

**COUNSEL FOR DEFENDANT**
**DEHSHID NOURIAN (2)**

/s/ Barry J. Sorrels
Barry J. Sorrels
State Bar No. 18855300
Email: bjs@sorrelshagood.com
Stephanie Luce Ola
State Bar No. 24065649
Email: slo@sorrelshagood.com
Sorrels Hagood
2515 McKinney Ave, Suite 940
Dallas, Texas 75201
Phone: (214) 720-4040
Fax: (214) 237-0905

**COUNSEL FOR DEFENDANT**
**CHRISTOPHER RYDBERG (3)**

## CERTIFICATE OF SERVICE

I hereby certify this Motion was electronically filed, and Assistant United States Ethan Womble and Carlos Lopez was electronically served via this Court's Electronic Filing System on the day of filing.

*/s/ Jeff Kearney*
Jeff Kearney