IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | |
| v. | Case No. 3:17-CR-155-L |
| | |
| JAMSHID NORYIAN (01) | |
|   a.k.a. JAMES NORYIAN | |
| DEHSHID NOURIAN (02) | |
|   a.k.a. DAVID NOURIAN | |
| CHRISTOPHER RYDBERG (03) | |
| MICHAEL TABA (07) | |

## THE UNITED STATES OF AMERICA'S OMNIBUS MOTION *IN LIMINE*

## <u>TABLE OF CONTENTS</u>

1. The Government's Decision Not to Call a Particular Witness ..................................... 5
2. Blaming the Victims for the Fraud ............................................................................... 5
3. Any Suggestion that a Prosecutor or Agent Engaged in Misconduct.......................... 8
4. Defendants' Out-of-Court Hearsay Statements ........................................................... 9
5. Specific Acts of "Good Conduct"............................................................................... 11
6. Jury Nullification ....................................................................................................... 15
7. The Government's Decision Not to Charge an Individual ......................................... 18
8. Consideration of Possible Sentencing Guidelines for Cooperating Witnesses .......... 19
9. Evidence or Argument Regarding Witness Conduct Not Involving Dishonesty ....... 20
10. Authenticate Records Pursuant to FRE 902 .............................................................. 21

## TABLE OF AUTHORITIES

### CASES

*McClanahan v. United States*, 230 F.2d 919 (5th Cir. 1956)...........................................16

*Pope v. United States*, 298 F.2d 507 (5th Cir. 1962) ......................................................17

*Rucker v. State*, 599 S.W.2d 581 (Tex. Crim. App. 1980)................................................7

*Shannon v. United States*, 512 U.S. 573 (1994) .............................................................12

*United States v. Ahmed*, No. 14-cr-277 (DLI), 2016 WL 8732355 (E.D.N.Y. June 24, 2016)..................................................................................................................................7

*United States v. Amico*, 486 F.3d 764 (2d Cir. 2007).......................................................6

*United States v. Armstrong*, 517 U.S. 456 (1996) ..........................................................14

*United States v. Benson*, 548 F.2d 42 (2d Cir. 1977) .......................................................6

*United States v. Blixt*, 548 F.3d 882 (9th Cir. 2008) ......................................................13

*United States v. Carr*, 424 F.3d 213 (2d Cir. 2005) .......................................................13

*United States v. Coffman*, 94 F.3d 330 (7th Cir. 1996) ....................................................6

*United States v. Davis*, 226 F.3d 346 (5th Cir. 2000) .......................................................6

*United States v. Drefke*, 707 F.2d 978 (8th Cir. 1983) ...................................................12

*United States v. Grimm*, 568 F.2d 1136 (5th Cir. 1978) ...................................................9

*United States v. Harris*, 491 F.3d 440 (D.C. Cir. 2007)..................................................14

*United States v. Jena*, 478 F. App'x 99 (5th Cir. May 11, 2012)......................................9

*United States v. Jeong*, 624 F.3d 706 (5th Cir. 2010) ....................................................15

*United States v. Kreimer*, 609 F.2d 126 (5th Cir. 1980) ..................................................5

*United States v. Lloyd*, 807 F.3d 1128 (9th Cir. 2015)...................................................14

*United States v. Marrero*, 904 F.2d 251 (5th Cir. 1990) .................................................10

*United States v. Paccione*, 949 F.2d 1183 (2d Cir. 1991) ...............................................14

*United States v. Roussel*, 705 F.3d 184 (5th Cir. 2013) ..................................................16

*United States v. Santana-Camacho*, 931 F.2d 966 (1st Cir. 1991) .................................13

*United States v. Svete*, 556 F.3d 1157 (11th Cir. 2009) ...................................................6

*United States v. Thomas*, 377 F.3d 232 (2d Cir. 2004) .....................................................6

*United States v. Thompson*, 253 F.3d 700, 2001 WL 498430 (5th Cir. Apr. 9, 2001) ..... 13

*United States v. Vincent*, 648 F.2d 1046 (5th Cir. 1981) ..................................................9

*United States v. Webster*, 162 F.3d 308 (5th Cir. 1998)..................................................15

*United States v. Wilson*, 322 F.3d 353 (5th Cir. 2003)...................................................15

*United States v. Wilson*, 408 F. App'x 798 (5th Cir. Nov. 15, 2010)..............................16

*United States v. Young*, 470 U.S. 1 (1985) ....................................................................12

*Washington v. Watkins*, 655 F.2d 1346 (5th Cir. 1981) .................................................12

*Wayte v. United States*, 470 U.S. 598 (1985) ................................................................15

**RULES**

Fed. R. Evid. 401 ..................................................................................... 13
Fed. R. Evid. 401, 402 ............................................................................. 11
Fed. R. Evid. 401, 402, 403 ..................................................................... 16
Fed. R. Evid. 404(B) ................................................................................. 11
Fed. R. Evid. 405(A) ................................................................................. 11
Fed. R. Evid. 405(b) ........................................................................ 9, 10, 11

## THE UNITED STATES OF AMERICA'S OMNIBUS MOTION *IN LIMINE*

The United States of America seeks the following *in limine* rulings from the Court in advance of the September 11, 2023 trial of Defendants Jamshid Noryian, Dehshid Nourian, Christopher Rydberg, and Michael Taba.

### 1.   The Government's Decision Not to Call a Particular Witness

The defendants should not be permitted to comment on or ask the jury to draw any negative inference from the government's decision not to call a particular witness. The government's witness list contains a number of individuals, and the investigation in this case included numerous witness interviews. "[I]f the witness is 'equally available' to both parties, any negative inference from one party's failure to call that witness is impermissible." *United States v. Wilson*, 322 F.3d 353, 363 n.14 (5th Cir. 2003) (quoting *McClanahan v United States*, 230 F.2d 919, 925 (5th Cir. 1956)). The defendants can subpoena any witness available to the government. The Court previously granted the government's first motion *in limine* on this topic and should do so again. (Dkt. 447.)[1]

### 2.   Blaming the Victims for the Fraud

The defendants should be precluded from arguing, eliciting on direct or cross-examination, or offering any evidence at trial that tends to shift the blame for their fraud to the Department of Labor's Office of Workers' Compensation Program ("the DOL-OWCP") and Blue Cross Blue Shield ("BCBS"). The superseding indictment in this case charges the defendants with an extensive conspiracy to enrich themselves by fraudulently

---

[1] The Court's prior order noted that its ruling could be revisited if the evidence presented at trial led the defendants to believe it should be. (Dkt. 447.)

billing the DOL-OWCP and BCBS for medically unnecessary prescription medications. (*See* Dkt. 162.)  Any evidence or argument that the DOL-OWCP or BCBS failed to take precautions to insulate themselves from fraud is not admissible.  Similarly, any evidence or argument that DOL-OWCP was at fault for the high reimbursements paid to the defendants for their fraudulent billings is likewise inadmissible.  These kinds of "blame-the-victim" defenses to a healthcare fraud case are irrelevant, improper, and must be excluded.

The defendants may not point their fingers at the DOL-OWCP and BCBS to excuse their own conduct, as the possible negligence of the victim in failing to discover a fraudulent scheme is not a defense to a defendant's criminal conduct.  *See United States v. Kreimer*, 609 F.2d 126, 132 (5th Cir. 1980) ("The victim's negligence is not a defense to criminal conduct.  The truth about virtually every scheme to defraud could be obtained if the gull were clever and diligent enough. . . . The laws protecting against fraud are most needed to protect the careless and the naïve from lupine predators, and they are designed for that purpose."); *see also United States v. Davis*, 226 F.3d 346, 358–59 (5th Cir. 2000) (affirming jury instruction that "the naivety, carelessness, negligence, or stupidity of a victim does not excuse criminal conduct, if any, on the part of a defendant").  Indeed, it is a well-settled rule that a defendant charged with a fraudulent scheme may not assert as a defense the victim's negligent failure to discover the fraud. *United States v. Svete*, 556 F.3d 1157, 1165 (11th Cir. 2009) ("A perpetrator of fraud is no less guilty of fraud because their victim is also guilty of negligence"); *United States v. Thomas*, 377 F.3d 232, 243 (2d Cir. 2004) (citing cases from other circuits for the proposition that victim negligence is not a

defense to criminal conduct); *United States v. Amico*, 486 F.3d 764, 780 (2d Cir. 2007) (upholding district court's decision neither to charge the jury nor allow the defendants to argue "that it is a defense to mail fraud to demonstrate that the victim could have discovered based on external sources that the representation was false").

Any arguments that the DOL-OWCP and BCBS were somehow at fault are not only legally irrelevant but factually wrong. The government will prove at trial that the pharmacy-owner defendants paid physicians, including Defendant Michael Taba, to sign prescriptions for expensive compound medications for DOL-OWCP and BCBS beneficiaries who did not want, need, or request the medications and sometimes did not even know the medication had been prescribed for them. On their face, those claims would not have alerted the DOL-OWCP and BCBS to the fact that the compound medications were the products of kickbacks, were not needed, or that the providers had not personally performed any assessment of the patients. The government will show that the defendants caused the submission of fraudulent claims for medically unnecessary services that appeared legitimate in an attempt to conceal this massive fraud from the DOL-OWCP, BCBS, and law enforcement.

In short, there is no contributory negligence in criminal law. Because issues relating to the DOL-OWCP and BCBS's actions have nothing to do with the defendants' guilt or innocence as a matter of law, evidence regarding the DOL-OWCP's or BCBS's failure or inability to discover their crimes sooner is irrelevant and may not be used as an excuse for their own conduct. Accordingly, the defendants should be precluded from doing so through argument, cross-examination, or any other means at trial.

3.    <u>Any Suggestion that a Prosecutor or Agent Engaged in Misconduct</u>

Allegations of misconduct are highly prejudicial, and the Court should preclude the defendants from arguing, eliciting on direct or cross-examination, or offering any evidence at trial suggesting the prosecution team in this case engaged in any type of misconduct.

During the first pre-trial conference, previous counsel for Defendant Taba expressed his intention to present as a defense the fact that the government dismissed Ashraf Mofid and Leyla Nourian: "It is the defense of Mr. Michael Taba that this investigation was so poorly done, they didn't even know they had exonerating evidence for two of the people they charged in this case." *See* Tr. of Oct. 13, 2022 Pretrial Conference, at 45-46. The Court should preclude Defendant Taba, and any other defendant, from arguing or introducing evidence regarding the dismissal of these two defendants and claiming it was due to governmental misconduct or a "poor" investigation.

In its earlier pre-trial rulings, the Court held that the defendants were "not [] allowed to introduce evidence, argue, or elicit testimony regarding 'prosecutorial misconduct'" and that the government's concern regarding a defendant's intent to raise the issue of the two dismissed defendants was encompassed by the Court's exclusion of arguments regarding alleged prosecutorial misconduct. (Dkt. 467). The Court should do so again, but also exclude any potential references to intentional agent misconduct because the government has narrowed its request consistent with the Court's concerns as expressed during the October 2022 pre-trial conference.[2] For example, Defendant Taba is likely to argue, at a

---

[2] This request does not limit the defense's ability to question testifying federal agents regarding the thoroughness or completeness of their investigation (*i.e.*, that an agent did not take certain investigatory

minimum, that the day he was voluntarily interviewed by agents, they (1) improperly seized his wife's cell phone; (2) intentionally endangered the well-being of one of his patients; (3) repeatedly lied to Defendant Taba about the reason for the interview; and (4) refused to let Defendant Taba end the interview and violated his *Miranda* rights.  (Dkt. 557).  The Court should preclude the defendants from making these types of inflammatory and factually unsupported arguments.  To the extent the defendants raise any type of similar argument at trial, they should be required to do so outside the presence of the jury so that the Court can determine if the allegation is relevant and whether its probative value is outweighed by undue prejudice.  *See* Fed. R. Evid. 401, 402, 403.

### 4.    Defendants' Out-of-Court Hearsay Statements

When a Defendant offers his or her out-of-court statement to prove the truth of the matter asserted, the statement is hearsay and inadmissible.  Fed. R. Evid. 801(c), 802. "While the Rules provide exceptions to the general prohibition against hearsay, '[t]he rules do not, however, provide exceptions for self-serving, exculpatory statements made by a party which are being sought for admission by that same party.'"  *United States v. Crinel*, No. CR 15-61, 2016 WL 6441249 at *2 (E.D. La. Nov. 1, 2016) (citing *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996)).   "[I]f such statements were deemed admissible . . . parties could effectuate an end-run around the adversarial process by, in

---

steps).  Rather, the government simply seeks to exclude any suggestion that federal agents or prosecutors engaged in intentional misconduct, as well as any references to the dismissed defendants.

effect, testifying without swearing an oath, facing cross-examination, or being subjected to first-hand scrutiny by the jury." *Id.*[3]

The defendants' exhibit lists contain numerous emails written by themselves and others. *See, e.g.*, (Dkt. 561, Exh. Nos. 77-83, "Email[s] between Uddin and Rydberg," Exh. No. 108, "Email between Rydberg and [others]," Exh. No. 116, "Email between Rydberg [and others]"; Exh. Nos. 102-207, identifying many emails involving Rydberg); (Dkt. 581, Exh. No. 70 "Email communications between Dr. Taba and Raymund King"); (Dkt. No. 570, Exh. No. 72 "Email with Floorplan for Hemphill Location"). These exhibits include emails authored by Defendants Christopher Rydberg and Michael Taba. In one clear example of inadmissible self-serving hearsay, Defendant Taba included an email he authored to his office staff noting the "need to follow all federal, state and local rules and regulations." The defendants should be precluded from introducing such hearsay statements through any other witness, regardless of whether that witness is presented by the United States or by the defendants. To allow otherwise would permit the defendants to elude cross-examination.

---

[3] "In *United States v. Morad*, et al., the court found statements 'collateral to a self-inculpatory statement' should not 'be treated any differently from other hearsay statements that are generally excluded.' The *Morad* court concluded, 'Thus, Rule 801(d)(2) 'does not extend to a party's attempt to introduce his or her own statements through the testimony of other witnesses.' As a result, while the Government may introduce part of a statement made by the defendant, or part of a statement that included a statement against interest, the defendant could not then seek to introduce the exculpatory part of the statement that had not been introduced." *Crinel*, 2016 WL 6441249, at *2 (quoting *United States v. Morad*, No. 2:13-CR-101 (E.D. La. Apr. 27, 2016) (R. Doc. 328, at 2-3)) (internal citations omitted).

5.    **Specific Acts of "Good Conduct"**

The defendants should be precluded from arguing, eliciting on direct or cross-examination, or offering any evidence at trial of specific acts of "good conduct," including evidence of: (1) legitimate prescriptions or billing by the defendants; and (2) the provision of legitimate services by a defendant.  Such evidence is not probative of the issues at trial and will serve only to confuse or to mislead the jury.  This type of evidence also is inadmissible because it is irrelevant to the charges alleged in the superseding indictment, and it constitutes improper character evidence under Federal Rule of Evidence 405(b). Further, to the extent such evidence might have any probative value, it should nonetheless be excluded under Federal Rule of Evidence 403, because the probative value of such evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, undue delay, and waste of time.[4]

In a fraud case, evidence of other instances where the defendants did *not* commit fraud is irrelevant to the question of whether they *did* commit fraud in the instances alleged. This is a well-settled proposition; the Fifth Circuit and other circuit courts have repeatedly held that evidence that a defendant engaged in legal, honest conduct some of the time has simply no bearing on whether the defendants engaged in the fraudulent conduct charged by the government.  Indeed, "evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant."  *United States v. Vincent*, 648 F.2d 1046, 1051 (5th Cir. 1981) (explaining that evidence must "relate . . . to the subject matter of the

---

[4] And, if the defendants seek to present evidence of specific instances of purported good acts as circumstantial proof that they did not commit the charged offenses, the defendants should be required to first approach the bench before inquiring into the acts, and the Court should exclude such evidence.

indictment"); *see United States v. Jena*, 478 F. App'x 99, 104 (5th Cir. 2012) (same);
*United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978) (same).  Under Rule 405(b),
specific acts of good character are only admissible "[w]hen a person's character or
character trait is an essential element of a charge, claim, or defense."  Fed. R. Evid. 405(b).
Applying those rules, district courts regularly exclude evidence of specific acts of good
conduct that a defendant seeks to introduce in order to establish a lack of motive or intent,
and the Fifth Circuit has repeatedly affirmed such rulings.  *See, e.g.*, *United States v.
Marrero*, 904 F.2d 251, 259–61 (5th Cir. 1990); *Grimm*, 568 F.2d at 1137–38.

For example, in *Marrero*—a false-claims case involving overbilling and billing for
services not rendered by a psychologist—the district court precluded the psychologist from
introducing evidence of her legitimate billings.  904 F.2d at 259–60.  Affirming, the Fifth
Circuit explained, "[t]he fact that [the defendant] did not overcharge in every instance in
which she had the opportunity to do so is not relevant to whether she, in fact, overcharged
*as alleged in the indictment*."  *Id.* at 260 (emphasis added).  The Fifth Circuit further
explained that, because the defendants' character was not an essential element of the
charges against her, her attempt to use specific acts circumstantially to prove lack of intent
"is not only disfavored, it is not permitted under Rule 405(b)."  *Id.*; *see also Grimm*, 568
F.2d at 1137–38 ("Evidence of noncriminal conduct to negate the inference of criminal
conduct is generally irrelevant.").

Here, the government has alleged that the defendants conspired with each other and
others to execute the fraudulent schemes outlined in the superseding indictment.  The
defendants may try to offer evidence about occasions where they followed the rules, helped

patients, and legitimately treated or billed for those patients.  By way of example, Defendant Taba's witness list contains several patients who do not appear to be in the claims data for DOL-OWCP or BCBS, suggesting he intends to call these witnesses to testify about other purportedly appropriate treatment and/or prescriptions Defendant Taba may have provided.  Defendant Taba apparently intends to call witnesses to testify about the orthopedic surgeries he performed on patients and the success of those surgeries.  Such evidence or argument should be excluded because the fraudulent conduct at issue is Defendant Taba's fraudulent prescribing of expensive compound medications and referral of those prescriptions to the pharmacies in exchange for kickbacks, not other medical procedures.  The treatment of these patients is entirely outside the scope of the charged conspiracies.  Furthermore, numerous exhibits on Defendant Taba's exhibit list are identified as patient files, but because the government has not received many of these patient files (e.g., Exhibits 26-27, 29-56), it is unable to discern the nature of this evidence or what type of defense Defendant Taba intends to present based on these medical records.

The defendants are not charged with crimes related to any legitimate business they may have done.  Instead, at issue is the defendants' prescribing and filling prescriptions for compound medications patients did not need, and then fraudulently billing DOL-OWCP and BCBS for those claims.  Evidence that the defendants *sometimes* did not commit this fraud, or, in the case of Defendant Taba, that he helped his patients through the orthopedic surgeries he performed, is not probative of any fact that is of consequence and is therefore irrelevant and inadmissible.  *See* Fed. R. Evid. 401, 402.  Good conduct evidence does not relate to any of the counts in the superseding indictment because it does not disprove the

defendants' participation in the charged conduct. The defendants, in effect, would be suggesting to the jury that they did not commit the charged crimes because they are innocent of *un*charged conduct. The factual issues before the jury should be limited to the charged conduct in the superseding indictment, and any evidence that the defendants might have provided legitimate medical services or submitted nonfraudulent claims should be excluded as irrelevant and improper character evidence.

Even if such evidence were somehow relevant to the defendants' character, the evidence is barred by Federal Rule of Evidence 405(a), which prohibits the use of specific acts to prove character, and Federal Rule of Evidence 404(b), which prohibits the use of specific acts to show character for propensity purposes. Because this is not a case in which a defendants' "character or character trait is an essential element of a charge, claim, or defense," Fed. R. Evid. 405(b), the only proper method for the defendants to establish their good character is through opinion or reputation testimony of character witnesses. Evidence of specific good acts would confuse the jury, waste time, and is not probative of any fact of consequence in the case. Accordingly, like in *Marrero*, the defendants should not be permitted to present evidence of specific purported good acts as a defense to conduct that is alleged in the superseding indictment. The government seeks this ruling in advance of trial because while it can object when the defense attempts to introduce evidence or argument concerning specific instances of good conduct, a jury will have already heard it and a limiting instruction would be insufficient to remedy the prejudice.

6. **Jury Nullification**

The defendants should be precluded from offering evidence or arguments that in any way encourage the jury to acquit based on anything other than the evidence and the law. Courts have universally rejected jury nullification arguments, and similarly rejected the notion that otherwise irrelevant evidence or argument may be permitted because it suggests, implicitly or explicitly, that a jury ought to make its decision on a basis other than the evidence and law. Such evidence or arguments would include references to the defendants' potential sentences should they be convicted, the impact of a conviction on the defendants' families, and any other collateral consequences of a criminal conviction. It would also include any suggestion that this should have been a civil, rather than criminal, matter. *See United States v. Akula*, No. 21-98, 2023 WL 4235568, at *2 (E.D. La. June 28, 2023) (holding that evidence suggesting civil or administrative punishment might be more appropriate than criminal prosecution invites jury nullification). This category of evidence and argument is meant solely to appeal to a jury's emotions by encouraging them to acquit based on sympathy for the defendants and have no bearing on the guilt or innocence of the defendants.

Since the Supreme Court's decision in *Sparf v. United States*, 156 U.S. 51 (1895), "federal courts have uniformly recognized the right and the duty of the judge to instruct the jury on the law and the jury's obligation to apply the law to the facts, and that nullification instructions should not be allowed." *United States v. Drefke*, 707 F.2d 978, 982 (8th Cir. 1983). Because the jury has no role in sentencing here, any mention of a potential sentence is irrelevant and would serve only to invite jury nullification. *See, e.g.*,

*Shannon v. United States*, 512 U.S. 573, 579 (1994); *United States v. Young*, 470 U.S. 1, 7-10 (1985); *United States v. Thompson*, 253 F.3d 700, 2001 WL 498430, at *16 (5th Cir. Apr. 9, 2001); *see also Washington v. Watkins*, 655 F.2d 1346, 1374 (5th Cir. 1981). Relatedly, any suggestion that a guilty verdict would negatively impact the defendants or their families invites the jury to consider the potential consequences of a conviction and thus creates an impermissible risk of jury nullification.  Case law in this and other jurisdictions uniformly precludes such jury nullification arguments.  *See* Fed. R. Evid. 401; *see also, e.g.*, *Thompson*, 253 F.3d 700, 2001 WL 498430, at *17 (holding that counsel may not encourage the jury to "use its de facto power to refuse to apply the law as instructed by the court [and] exercise . . . such power in dereliction of the jury's sworn duty" (alterations in original and internal quotation marks omitted)); *United States v. Blixt*, 548 F.3d 882, 890 (9th Cir. 2008) (district court properly instructed jury to disregard counsel's "blatant jury nullification arguments"); *United States v. Carr*, 424 F.3d 213, 220 (2d Cir. 2005) ("We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent.").

Further, evidence concerning the defendants' family or personal circumstances—aside from the relationship between Defendants Jamshid Noryian and Christopher Rydberg[5]—is irrelevant to the crimes charged in the superseding indictment.  *See* Fed. R.

---

[5] The government expects Defendant Rydberg to argue that he was very close to his stepfather, Jamshid Noryian, and simply followed the orders of a loved one.  This motion *in limine* does not seek to preclude such a defense; rather, it is seeks to exclude other evidence and arguments similar to the examples described below.

Evid. 401.   Specifically, evidence or argument that, for example, a defendant had a challenging upbringing, has children, or emigrated to the United States and ran a successful real estate business has no bearing on any elements of the crimes charged or defenses in this case and is therefore irrelevant and inadmissible.  *See id*.; *see also Santana-Camacho*, 931 F.2d at 967 (upholding exclusion of evidence that defendant was "a kind person and a good family man" because such evidence did not "make any fact of consequence to the determination of the case significantly more or less probable" (internal quotations omitted)).

Even if such evidence were deemed relevant, its probative value is substantially outweighed by the danger of unfair prejudice and misleading the jury.  *See* Fed. R. Evid. 403.  Any evidence introduced by the defendants or others regarding their families would be "designed to improperly appeal to the sympathy of the jury," in the hope that that it would nullify a guilty verdict.  *United States v. Lloyd*, 807 F.3d 1128, 1163 (9th Cir. 2015) (district court did not abuse its discretion in excluding testimony regarding the birth of defendants' daughter as the probative value was substantially outweighed by the risks of unfair prejudice); *see United States v. Harris*, 491 F.3d 440, 447 (D.C. Cir. 2007) (finding the district court's evidentiary position was "unassailable" and no abuse of discretion occurred when testimony from the defendants' mother and girlfriend was limited "to prevent testimony whose purpose was, in the court's judgment, purely or mainly to cast [defendant] in the sympathetic light of a dedicated family man"); *United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) (the exclusion of testimony that defendants' son had

cerebral palsy "was well within the court's discretion" as the evidence "could well cause the jury to be influenced by sympathies having no bearing on the merits of the case").

Accordingly, the defendants should be precluded from introducing evidence or arguments that implicitly or explicitly encourage the jury to acquit based on anything other than the evidence admitted at trial and the law as explained by the Court.

### 7.  <u>The Government's Decision Not to Charge an Individual</u>

Any statements criticizing the fact that a person was not charged in the superseding indictment or whether any other individual has been, should have been, or will be charged with a crime are not relevant to the guilt of a defendant.  In *United States v. Thompson*, the Fifth Circuit affirmed the district court's granting of a government motion *in limine* preventing the defendants from making "[a]ny type of comparison during closing argument of the arguably criminal acts of immunized or uncharged witnesses to the alleged criminal acts of a Defendant."  253 F.3d 700, 2001 WL 498430, at *16.  *See also United States v. Armstrong*, 517 U.S. 456, 463 (1996) ("[a] selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution"); *United States v. Webster*, 162 F.3d 308, 333 (5th Cir. 1998) (noting "[t]he decision to prosecute one person and not another is proper exercise of executive discretion with which [courts] are reticent to interfere"); *United States v. Jeong*, 624 F.3d 706, 713 (5th Cir. 2010) ("[T]he decision to prosecute is particularly ill-suited to judicial review," and the government "retains broad discretion as to whom to prosecute" (citing *Wayte v. United States*, 470 U.S. 598, 607

(1985)).  Any statements to that effect are only meant to prejudice the jury; therefore, the statements offer no probative value.  *See* Fed. R. Evid. 403.

Here, the government anticipates that the Defendants may attempt to shift blame for their fraudulent conduct onto at least one uncharged individual: a pharmacist who was also an owner of Ability Pharmacy.  Any evidence, statements, or argument regarding the fact that this individual (or anyone else) was not charged for his or her alleged involvement in the fraud should be precluded.  Allowing such an argument would impermissibly suggest to the jury that they should draw the conclusion the defendants here are innocent because that other individual was not charged or that they should not convict the defendants here because their partner was not also charged.  In accordance with the Fifth Circuit's Pattern Jury Instruction No. 1.21, the government will also ask the Court to instruct the jury that they are only to consider the crimes charged and that they are not "called upon to return a verdict as to the guilt of any other person or persons."  Assuming the Court will give this standard instruction, defense counsel drawing comparisons with uncharged individuals would be tantamount to a request for jury nullification.

The government seeks this ruling in advance of trial because, while it can object if and when the defense raises these issues, a jury will have already heard the argument and a limiting instruction would likely be insufficient to remedy the prejudice.

### 8.   Consideration of Possible Sentencing Guidelines for Cooperating Witnesses

It is well-established that the defendants may cross-examine cooperating witnesses about sources of potential bias.  A cooperating witness may be cross-examined about their motivations for entering into the plea and the agreement itself, including that in exchange

for pleading guilty, the government would not charge the witness with additional crimes. *See United States v. Wilson*, 408 F. App'x 798, 803 (5th Cir. Nov. 15, 2010). However, the right is not unlimited. The defendants should not be permitted to question cooperating witnesses regarding the specific sentences ordered in their cases or the sentencing Guidelines range they faced or will face as a result of a plea agreement. *See United States v. Roussel*, 705 F.3d 184, 194–95 (5th Cir. 2013) (no abuse of discretion for district court to limit questioning into cooperating witness's possible exposure under the sentencing guidelines).

Because of the similar nature of the crimes for which the defendants are charged and cooperating witnesses have been convicted, such questioning would "improperly reveal[] to jurors the Guideline-range" the defendants here face and "risk[] unnecessarily confusing the jury." *Id.* (citing *Pope v. United States*, 298 F.2d 507, 508 (5th Cir. 1962) (informing jurors of matters relating to defendants' sentence opens door to compromised verdicts and confuses issues to be decided)). The potential for unfair prejudice in such information being revealed substantially outweighs any probative value, which is minimal. A motion in limine is being sought to exclude such evidence because a jury likely will have already heard the Sentencing Guidelines information before any objection can be made.

## 9.  <u>Evidence or Argument Regarding Witness Conduct Not Involving Dishonesty</u>

The Court should preclude the defense from arguing, eliciting on direct or cross-examination, or offering any evidence at trial regarding any government witness's conduct that has no bearing on the witness's character for truthfulness. Specifically, the

government anticipates calling a fact witness who has admitted to using certain drugs—mushrooms, MDMA ("ecstasy"), and marijuana—to treat his or her depression and anxiety and for spiritual purposes.  Evidence or argument regarding this witness's drug use should be excluded because it has no bearing on his or her character for truthfulness and would unfairly bias the jury.  *See United States v. McDonald*, 905 F.2d 871, 875 (5th Cir. 1990) ("This court has held, however, that drug use is not probative of truthfulness."); *United States v. Williams*, 822 F.2d 512, 516-17 (5th Cir. 1987).  To the extent the defendants claim they should be allowed to cross-examine this witness regarding his or her drug use to show that it affected his or her ability to recall and perceive the events in question, they should be required to proffer evidence, outside the presence of the jury, establishing that such use actually impaired the witness's memory during the relevant time period.  *See Hover v. Brenner*, 229 F.3d 1147, 2000 WL 1239118, at *2 (5th Cir. 2000).

**10.   Authenticate Records Pursuant to FRE 902**

Finally, the government seeks a pre-trial ruling authenticating records pursuant to Federal Rules of Evidence 902(1), 902(11), 902(13), and 902(14).  These records include Secretary of State records, bank records, tax records, claims data, audio recordings, emails, and text messages and are self-authenticating business records or data copied from electronic devices.  Each has an accompanying affidavit which negates the need for live witness testimony to authenticate the records.  The government respectfully requests that the Court rule on this motion before trial so that the records custodian witnesses can either forgo travel or plan accordingly.

The government is not asking the Court to find that any of the underlying accounts or records belong to the defendants or their coconspirators; this will be established at trial. Nor does the authentication requested preclude defendants from challenging the admission of any of the records on hearsay, relevance, or other grounds. Thus, this request serves simply to authenticate the records in advance of trial to conserve the resources of the Court, the jury, and third-party witnesses.

**Public Records and Business Records Under FRE 902(1) and (11)**

| GX | DESCRIPTION | AFFIDAVIT DATE(S) |
|---|---|---|
| **Secretary of State Records** | | |
| **101** | Ability Secretary of State Filings | 12/9/2019 |
| **102** | Industrial and Family Secretary of State Filings | 12/10/2019 |
| **103** | Park Row Pharmacy Secretary of State Filings | 12/9/2019 |
| **104** | Bandoola Secretary of State Filings | 12/9/2019 |
| **105** | HJLM Holding LLC Secretary of State Filings | 12/9/2019 |
| **106** | Queen Shiva LLC Secretary of State Filings | 12/9/2019 |
| **107** | Ace Queen LLC Secretary of State Filings | 12/9/2019 |
| **108** | Ace King LLC Secretary of State Filings | 12/9/2019 |
| **109** | Michael Taba M.D. Secretary of State Filings | 12/9/2019 |
| **110** | Magnum Surgical Products LLC Secretary of State Filings | 12/9/2019 |
| **111** | Jade and Joy LLC Secretary of State Filings | 12/9/2019 |
| **112** | Benson Injury Clinic P.A. Secretary of State Filings | 12/9/2019 |
| **Claims Data** | | |
| **212** | Department of Labor Billing Data for Ability Pharmacy, Inc. | 9/20/2022 |
| **213** | BCBS Billing Data for Ability Pharmacy Inc. and Industrial & Family Pharmacy, LLC | 8/11/2023 |
| **214** | Department of Labor Billing Data for Industrial and Family Pharmacy, LLC | 9/20/2022 |

| GX | DESCRIPTION | AFFIDAVIT DATE(S) |
|---|---|---|
| 215 | Department of Labor Billing Data for Park Row Pharmacy, LLC | 9/20/2022 |
| 216 | BCBS Billing Data for Park Row Pharmacy, LLC | 8/11/2023 |
| 217 | Department of Labor Third-Party Billing Data for Ability Pharmacy, Industrial and Family Pharmacy, and Park Row Pharmacy | 9/20/2022 |
| 218 | Prime Therapeutics – Ability Pharmacy Claims Data | 9/23/2022 |
| 226 | Optum Records | 10/4/2022 |
| **Bank Records** | | |
| 501 | Bank Records for Wells Fargo Bank Account Ending in 6919 held in the name of Sherri Mofid | 2/3/2017 |
| 502 | Signature Card for Wells Fargo Account Ending in 6919 | 2/3/2017 |
| 503 | September 8, 2014 Check from Sherri Mofid to Michael Taba for $10,000 | 2/3/2017 |
| 504 | August 14, 2014 Cashier's Check from Sherri Mofid to Michael Taba for $100,000 | 2/3/2017 |
| 505 | September 8, 2014 Cashier's Check Sherrif Mofid to Michael Taba for $90,000 | 2/3/2017 |
| 506 | Financial Records for Scottrade Investment Account Ending in 1792 held in the name of Sherri Mofid | 5/27/2016 |
| 507 | Financial Records for TD Ameritrade Account Ending in 3760 held in the name of Sherri Mofid | 4/4/2016 |
| 508 | Bank Records for Wells Fargo Bank Account Ending in 3649 held in the name of Sherri Mofid | 3/9/2016 |
| 509 | JPMC account ending in 0481 held in the name of Sherri Mofid | 6/9/2016 |
| 510 | Financial Records for Scottrade Investment Account Ending in 1793 held in the Name of Sherri Mofid | 5/27/2016 |

| GX | DESCRIPTION | AFFIDAVIT DATE(S) |
|---|---|---|
| 511 | Signature Card for Scottrade Account Ending in 1793 | 5/27/2016 |
| 512 | January 1-31, 2016 Statement for Scottrade Account Ending in 1793 | 5/27/2016 |
| 513 | Bank Records for JP Morgan Chase Account Ending in 5614 held in the name of Michael Taba | 10/11/2016 |
| 514 | Deposit Slip for $100,000 to Chase Account Ending in 5614 | 10/11/2016 |
| 515 | Deposit Slip for $90,000 to Chase Account Ending in 5614 | 10/11/2016 |
| 516 | Deposit Slip for $10,000 to Chase Account Ending in 5614 | 10/11/2016 |
| 517 | Deposit Slip for $150,000 to Chase Account Ending in 5614 | 10/11/2016 |
| 518 | Deposit Slip for $70,000 to Chase Account Ending in 5614 | 10/11/2016 |
| 519 | Deposit Slip for $136,600 to Chase Account Ending in 5614 | 10/11/2016 |
| 520 | Deposit Slip for $258,000 to Chase Account Ending in 5614 | 10/11/2016 |
| 521 | Withdrawal Slip for $750,000 from Chase Account Ending in 5614 | 10/11/2016 |
| 522 | Bank Records for Wells Fargo Bank Account Ending in 3119 Held in the Name of HJLM, LLC | 6/16/2016 & 3/9/2016 |
| 523 | Bank Records for JP Morgan Chase Account Ending in 2338 held in the name of Michael Taba | 10/11/2016 |
| 524 | Signature Card for Chase Account Ending in 2338 | 10/11/2016 |
| 525 | Bank Records for JP Morgan Chase Account Ending in 4105 held in the name of Michael Taba | 7/20/2016 |
| 526 | Bank Records for JP Morgan Chase Account Ending in 9472 held in the name of Michael Taba | 12/14/2016 |
| 527 | Bank Records for Wells Fargo Bank Account Ending in 9217 Held in the Name of Christopher J. Rydberg | 6/16/2016 & 3/9/2016 |
| 528 | Signature Card for Wells Fargo Account Ending in 9217 | 6/16/2016 & 3/9/2016 |
| 529 | October 15, 2014 Cashier's Check from Christopher J. Rydberg to Michael Taba for $150,000 | 6/16/2016 & 3/9/2016 |

| GX | DESCRIPTION | AFFIDAVIT DATE(S) |
|---|---|---|
| 530 | July 8, 2015 Cashier's Check from Christopher J. Rydberg to Magnum Surgical Products (Kevin Williams) for $279,000 | 6/16/2016 & 3/9/2016 |
| 531 | Bank Records for Wells Fargo Bank Account 7909 Held in the Name of Restaurant & Associates, Inc. | 6/16/2016 & 3/9/2016 |
| 532 | Signature Card for Wells Fargo Account Ending in 7909 | 6/16/2016 & 3/9/2016 |
| 533 | November 17, 2014 Cashier's Check from Christopher Rydberg to Michael Taba for $70,000 | 6/16/2016 & 3/9/2016 |
| 534 | Bank Records for Wells Fargo Bank Account Ending in 8897 Held in the Name of Bandoola Pharmaceutical, LLC | 4/4/2016 |
| 535 | Signature Card for Wells Fargo Account Ending in 8897 | 4/4/2016 |
| 536 | Withdrawal Slip for $136,630 from Wells Fargo Account Ending in 8897 | 4/4/2016 |
| 537 | February 16, 2016 Check from Bandoola Pharmaceutical to Magnum Surgical Products (Kevin Williams) for $125,000 | 4/4/2016 |
| 538 | Withdrawal Slip for $381,000 from Wells Fargo Account Ending in 8897 | 4/4/2016 |
| 539 | Withdrawal Slip for $560,000 from Wells Fargo Account Ending in 8897 | 4/4/2016 |
| 540 | September 21, 2015 Check from Bandoola Pharmaceutical to Magnum Surgical Products (Kevin Williams) for $219,000 | 4/4/2016 |
| 541 | Withdrawal Slip for $309,010 from Wells Fargo Account Ending in 8897 | 4/4/2016 |
| 542 | April 22, 2015 Check to Nicolas Aguilar for $10,000 | 4/4/2016 |
| 543 | December 2, 2015 Check to Nicolas Aguilar for $10,000 | 4/4/2016 |
| 544 | Bank Records for JP Morgan Chase Account Ending in 6653 Held in the Name of Dr. Leyla Nourian | 6/3/2016 |
| 545 | Signature Card for Chase Account Ending in 6653 | 6/3/2016 |

| GX | DESCRIPTION | AFFIDAVIT DATE(S) |
|---|---|---|
| 546 | Withdrawal Slip for $108,000 from Chase Account Ending in 6653 | 6/3/2016 |
| 547 | Bank Records for Ennis State Bank Account Ending in 7903 Held in the Name of Kevin Williams | 11/23/2015 |
| 548 | Signature Card for Ennis State Bank Account Ending in 7903 | 11/23/2015 |
| 549 | Deposit Slip for $214,000 to Ennis State Bank Account Ending in 7903 | 11/23/2015 |
| 550 | Deposit Slip for $219,000 to Ennis State Bank Account Ending in 7903 | 11/23/2015 |
| 551 | Deposit Slip for $309,000 to Ennis State Bank Account Ending in 7903 | 11/23/2015 |
| 552 | Wells Fargo Account Ending in 3119 Held in the Name of HJLM, LLC | 6/16/2016 & 3/9/2016 |
| 553 | February 2, 2016 Check from HJLM Holding LLC to Lee Diehl for $2,000 | 6/16/2016 & 3/9/2016 |
| 554 | December 29, 2015 Check from HJLM Holding LLC to David McDonald for Draw on Taba Job for $3,000 | 6/16/2016 & 3/9/2016 |
| 555 | January 26, 2016 Check from HJLM Holding LLC to David McDonald for Taba Job for $5,300 | 6/16/2016 & 3/9/2016 |
| 556 | December 17, 2015 Check from HJLM Holding LLC to Jimmy Eaves for Draw on Taba Job for $5,000 | 6/16/2016 & 3/9/2016 |
| 557 | Bank Records for Wells Fargo Bank Account Ending in 0302 held in the name of Industrial & Family Pharmacy | 6/16/2016 & 5/27/2016 |
| 558 | Signature Card for Wells Fargo Account Ending in 0302 | 6/16/2016 & 5/27/2016 |
| 559 | December 1-December 15, 2015 Statement for Account Ending in 0302 | 6/16/2016 & 5/27/2016 |
| 560 | January 1-January 31, 2016 Statement for Account Ending in 0302 | 6/16/2016 & 5/27/2016 |
| 561 | Bank Records for JP Morgan Chase Account Ending in 9863 held in the name of Industrial & Family Pharmacy | 11/18/2016 |

| GX | DESCRIPTION | AFFIDAVIT DATE(S) |
|---|---|---|
| 562 | Signature Card for JP Morgan Chase Account Ending in 9863 | 11/18/2016 |
| 563 | January 19-29, 2016 Statement for JP Morgan Chase Account Ending in 9863 | 11/18/2016 |
| 564 | Bank Records for JP Morgan Chase Account Ending in 3462 held in the name of Jade and Joy, LLC | 3/28/2016 |
| 565 | Signature Card for JP Morgan Chase Account Ending in 3462 | 3/28/2016 |
| 566 | January 1-29, 2016 Statement for JP Morgan Chase Account Ending in 3462 | 3/28/2016 |
| 567 | May 1-29, 2015 Statement for JP Morgan Chase Account Ending in 3462 | 3/28/2016 |
| 568 | September 1-30, 2015 Statement for JP Morgan Chase Account Ending in 3462 | 3/28/2016 |
| 569 | October 30-November 30, 2015 Statement for JP Morgan Chase Account Ending in 3462 | 3/28/2016 |
| 570 | May 30-June 30, 2015 Statement for JP Morgan Chase Account Ending in 3462 | 3/28/2016 |
| 571 | July 1-31, 2015 Statement for JP Morgan Chase Account Ending in 3462 | 3/28/2016 |
| 572 | Bank Records for Prosperity Bank Account Ending in 9542 held in the name of Ability Pharmacy, Inc. | 6/25/2015 & 3/22/2016 |
| 573 | Signature Card for Prosperity Bank Account Ending in 9542 | 6/25/2015 & 3/22/2016 |
| 574 | Excerpt from January 31, 2016 Statement for Prosperity Bank Account Ending in 9542 | 6/25/2015 & 3/22/2016 |
| 575 | Excerpt from October 31, 2015 Statement for Prosperity Bank Account Ending in 9542 | 6/25/2015 & 3/22/2016 |

| GX | DESCRIPTION | AFFIDAVIT DATE(S) |
|---|---|---|
| 576 | Excerpt from November 30, 2015 Statement for Prosperity Bank Account Ending in 9542 | 6/25/2015 & 3/22/2016 |
| 577 | Bank Records for JP Morgan Chase Account Ending in 2280 held in the Name of Ability Pharmacy, Inc. | 7/3/2015, 9/9/2015, & 3/29/2016 |
| 578 | JP Morgan Chase Signature Card for Account Ending in 2280 | 7/3/2015, 9/9/2015, & 3/29/2016 |
| 579 | January 1-January 29, 2016 Statement for JP Morgan Chase Account Ending in 2280 | 7/3/2015, 9/9/2015, & 3/29/2016 |
| 580 | May 1-May 29, 2015 Statement for JP Morgan Chase Account Ending in 2280 | 7/3/2015, 9/9/2015, & 3/29/2016 |
| 581 | October 1-30, 2015 Statement for JP Morgan Chase Account Ending in 2280 | 7/3/2015, 9/9/2015, & 3/29/2016 |
| 582 | October 31-November 30, 2015 Statement for JP Morgan Chase Account Ending in 2280 | 7/3/2015, 9/9/2015, & 3/29/2016 |
| 583 | September 1-30, 2015 Statement for JP Morgan Chase Account Ending in 2280 | 7/3/2015, 9/9/2015, & 3/29/2016 |
| 584 | Bank Records for Prosperity Bank Account Ending in 6341 held in the name of Ability Pharmacy, Inc. | 6/25/2015 & 3/22/2016 |
| 585 | Signature Card for Prosperity Bank Account Ending in 6341 | 6/25/2015 & 3/22/2016 |
| 586 | Excerpt from April 30, 2015 Statement for Prosperity Bank Account Ending in 6341 | 6/25/2015 & 3/22/2016 |
| 587 | Excerpt from May 31, 2015 Statement for Prosperity Bank Account Ending in 6341 | 6/25/2015 & 3/22/2016 |
| 588 | Bank Records for Bank of America Account Ending in 5271 held in the name of Ability Pharmacy, Inc. | 9/11/2018 |
| 589 | Signature Card for Bank of America Account Ending in 5271 | 9/11/2018 |
| 590 | October 1-31, 2015 Statement for Bank of America Account Ending in 5271 | 9/11/2018 |
| 591 | Transaction Logs for 8 Cashier's Checks from Bank of America Account Ending in 5271 | 9/11/2018 |

| GX | DESCRIPTION | AFFIDAVIT DATE(S) |
|---|---|---|
| 592 | Bank Records for JP Morgan Chase Account Ending in 3691 held in the name of Ability Pharmacy | 7/13/2015 |
| 593 | Bank Records for Wells Fargo Bank Account Ending in 6032 held in the name of Dehshid Nourian | 5/27/2016 |
| 594 | Signature Card for Wells Fargo Account Ending in 6032 | 5/27/2016 |
| 595 | January 1-31, 2016 Statement for Wells Fargo Account Ending in 6032 | 5/27/2016 |
| 596 | Financial Records for TD Ameritrade Account Ending in 8494 held in the name of Dehshid Nourian | 4/4/2016 |
| 597 | Signature Card for TD Ameritrade Account Ending in 8494 | 4/4/2016 |
| 598 | January 2016 Statement for TD Ameritrade Account Ending in 8494 | 4/4/2016 |
| 599 | Financial Records for Scottrade Investment Account Ending in 7680 held in the name of Dehshid Noryian | 5/27/2016 |
| 600 | Bank Records for Bancorp South Account Ending in 5371 held in the name of Bandoola Pharmacy | 3/22/2016 |
| 601 | Signature Card for BancorpSouth Bank Ending in 5371 | 3/22/2016 |
| 602 | July 21, 2015 Statement for BancorpSouth Bank Account Ending in 5371 | 3/22/2016 |
| 603 | September 30, 2015 Statement for BancorpSouth Bank Account Ending in 5371 | 3/22/2016 |
| 604 | November 30, 2015 Statement for BancorpSouth Bank Account Ending in 5371 | 3/22/2016 |
| 605 | Bank Records for JP Morgan Chase Account Ending in 7273 held in the name of Jade and Joy, LLC | 6/3/2016 & 10/3/2016 |
| 606 | Signature Card for JP Morgan Chase Account Ending in 7273 | 6/3/2016 & 10/3/2016 |

| GX | DESCRIPTION | AFFIDAVIT DATE(S) |
|---|---|---|
| 607 | June 12-30, 2015 Statement for JP Morgan Chase Account Ending in 7273 | 6/3/2016 & 10/3/2016 |
| 608 | July 1-31, 2015 Statement for JP Morgan Chase Account Ending in 7273 | 6/3/2016 & 10/3/2016 |
| 609 | Bank Records for BBVA Compass Account Ending in 4076 held in the name of Park Row Pharmacy | 6/6/2016 |
| 610 | Bank Records for Wells Fargo Bank Account Ending in 2629 held in the name of Park Row Pharmacy | 6/16/2016 & 3/27/2017 |
| 611 | Bank Records for JP Morgan Chase Account Ending in 1940 held in the name of Nourian Dental | 6/3/2016 |
| 612 | Churchill Management Business Records for James Noryian, Dehshid Noryian, & Sherri Mofid | 9/22/2022 |
| 613 | Churchill Mgmt CRM Notes | 4/5/2017 |
| 614 | Bank Records for JP Morgan Chase Account Ending in 4105 held in the name of Michael Taba (Refresh) | 5/10/2023 |
| 615 | Wells Fargo Acct 2629 - Christopher Rydberg Refresh | 1/22/2022 |
| **Tax Records** | | |
| 626 | Ability Pharmacy 2015 Form 1120S | 8/1/2023 |
| 627 | Ability 2015 Transcript of Account | 8/1/2023 |
| 628 | Ability 2016 Form 1120S | 8/1/2023 |
| 629 | Second Ability Pharmacy 2016 Form 1120S | 8/1/2023 |
| 630 | Ability 2016 Transcript of Account | 8/1/2023 |
| 631 | 2015 General Ledger for Ability Pharmacy | 8/1/2023 |
| 632 | Industrial & Family Pharmacy 2015 Form 1120S | 8/1/2023 |
| 633 | Industrial & Family Pharmacy 2015 Transcript of Account | 8/1/2023 |
| 634 | Industrial & Family Pharmacy Form 1120S 2016 Lack of Records | 8/1/2023 |
| 635 | Industrial & Family Pharmacy 2016 Transcript of Account | 8/1/2023 |
| 636 | 2015 Industrial & Pharmacy - Signature Form - Form 8879-S | 8/1/2023 |
| 637 | 2016 Industrial & Family Pharmacy - Signature Form - Form 8879-S | 8/1/2023 |

| GX | DESCRIPTION | AFFIDAVIT DATE(S) |
|---|---|---|
| 638 | 2015 General Ledger for Industrial & Family Pharmacy | 8/1/2023 |
| 639 | 2016 General Ledger for Industrial & Family Pharmacy | 8/1/2023 |
| 640 | Park Row 2015 Form 1120S | 8/1/2023 |
| 641 | Park Row 2015 Transcript of Account | 8/1/2023 |
| 642 | Park Row 2016 Form 1120S | 8/1/2023 |
| 643 | Park Row 2016 Transcript of Account | 8/1/2023 |
| 644 | Park Row 2015 BBVA Compass & Wells Fargo Bank Records | 8/1/2023 |
| 645 | 2015 Park Row Pharmacy - Signature Form - Form 8879-S | 8/1/2023 |
| 646 | 2016 Park Row Pharmacy - Signature Form - Form 8879-S | 8/1/2023 |
| 647 | 2015 General Ledger for Park Row Pharmacy | 8/1/2023 |
| 648 | 2016 General Ledger for Park Row Pharmacy | 8/1/2023 |
| 649 | Dehshid Nourian 2015 Form 1040 | 8/1/2023 |
| 650 | Dehshid Nourian Form 1040 2015 (with signatures) | 8/1/2023 |
| 651 | Dehshid Nourian 2015 Transcript of Account | 8/1/2023 |
| 652 | Dehshid Nourian 2016 Form 1040 | 8/1/2023 |
| 653 | Dehshid Nourian Form 1040 2016 (with signatures) | 8/1/2023 |
| 654 | Deshid Nourian 2016 Transcript of Account | 8/1/2023 |
| 655 | Dehshid & A Pirnajmeddin Nourian 2015 Form 4549 | 8/1/2023 |
| 656 | 2015 Dehshid Nourian - Signature Page - Form 8879 | 8/1/2023 |
| 657 | 2016 Dehshid Nourian - Signature Page - Form 8879 | 8/1/2023 |
| 658 | Ali Khavaramanesh 2015 Form 1040 | 8/1/2023 |
| 659 | Ali Khavaramanesh 2015 Transcript of Account | 8/1/2023 |
| 660 | Ali & Mastaneh Sarra Khavaramanesh 2015 Form 4549 | 8/1/2023 |
| 661 | Robert Ritter 2015 Form 1040 | 8/1/2023 |
| 662 | Robert Ritter 2015 Transcript of Account | 8/1/2023 |
| 663 | Robert Ritter 2015 Form 4549 | 8/1/2023 |
| 664 | Julie Ritter 2015 From 1040 | 8/1/2023 |
| 665 | Julie Ritter 2015 Transcript of Account | 8/1/2023 |
| 666 | Julie Ritter 2015 Form 4549 | 8/1/2023 |
| 667 | Bandoola 2015 Form 1065 | 8/1/2023 |
| 668 | Bandoola 2015 Transcript of Account | 8/1/2023 |
| 669 | Bandoola 2016 Form 1065 | 8/1/2023 |
| 670 | Bandoola 2016 Transcript of Account | 8/1/2023 |
| 671 | HJLM 2015 Form 1065 | 8/1/2023 |
| 672 | HJLM 2015 Transcript of Account | 8/1/2023 |
| 673 | HJLM 2016 Form 1065 | 8/1/2023 |
| 674 | HJLM 2016 Transcript of Account | 8/1/2023 |

| GX | DESCRIPTION | AFFIDAVIT DATE(S) |
|---|---|---|
| 675 | Jade and Joy 2015 Form 1065 | 8/1/2023 |
| 676 | Jade and Joy 2015 Transcript of Account | 8/1/2023 |
| 677 | Jade and Joy 2016 Form 1065 | 8/1/2023 |
| 678 | Jade and Joy 2016 Transcript of Account | 8/1/2023 |
| 679 | Christopher Rydberg 2015 Form 1040 | 8/1/2023 |
| 680 | Christopher Rydberg 2015 Transcript of Account | 8/1/2023 |
| 681 | Jamshid Noryian Form 1040 2015 Certification Lack of Records | 8/1/2023 |
| 682 | Jamshid Noryian 2015 Transcript of Account | 8/1/2023 |
| 683 | Chase 2015_Expenses | 8/1/2023 |
| **Audio Recordings** | | |
| 914 | Recorded Conversation – James Noryian and Jared Haggard 10.05.15 | 9/30/2022 |
| 917 | Recorded Conversation – Dehshid Nourian and Jeff Byrum 01.26.16 | 9/28/2022 |
| **Miscellaneous Records** | | |
| 923 | Mailbox Service Agreement signed by Leyla Nourian | 3/17/2017 |
| **Titles** | | |
| 927 | Stewart Title - 217 Bella Riva | 7/14/2016 |
| 928 | Alamo Title - 2525 Handley - Leyla Nourian | 08/4/2016 |
| 929 | Rattikin Title - Van Alstyne - Sherri Mofid | 5/11/2016 |
| 930 | Autobahn BMW | 4/6/2017 |

**Data Authenticated by a Process of Digital Identification Under FRE 902(14)**

| Government Exhibit(s) | Description | Affidavit Date |
|---|---|---|
| **Emails and Text Messages** | | |
| 701 | Email from Kimberly McCoy to Melissa Sumerour Regarding Shuttle to Cowboys Game | 9/27/2022 |
| 702 | Email from Bernadette Hookham to Kimberly McCoy to Regarding New Clinic for Dr. Benson | 9/27/2022 |
| 709 | Email from Mike Benson to Kimberly McCoy Regarding Script Pad | 9/27/2022 |
| 710 | Email from Christopher Rydberg to Himself Regarding Magnum Surgical Products | 9/27/2022 |
| 722 | April 2016 Text Messages between Kimberly McCoy and Jamshid Noryian | 9/27/2022 |

| Government Exhibit(s) | Description | Affidavit Date |
|:---:|:---|:---:|
| **723** | May 2016 Text Messages between Kimberly McCoy and Jamshid Noryian | 9/27/2022 |
| **724** | September 2015 Text Messages between Kimberly McCoy and Megan Marines | 9/27/2022 |
| **725** | January 2016 Text Messages between Kimberly McCoy and Hump Vangieson | 9/27/2022 |

The above-listed exhibits and certificates were all previously provided to the defense in discovery and were identified in the government's Notice of Intent to Offer Evidence Pursuant to Federal Rule of Evidence 902. (Dkt. 565). The exhibits were also provided to the Court. Accordingly, the government has complied with any requirement of advance notice to the defense and has provided an opportunity for inspection of the exhibits.

To reiterate, even if the Court grants this motion, the records at issue will still be subject to challenge on the basis of hearsay and relevance. *See* Fed. R. Evid. 902(14), advisory committee's note to 2017 amendment ("A certification under this Rule can only establish that the proffered item is authentic. The opponent remains free to object to admissibility of the proffered item on other grounds—including hearsay, relevance, or in criminal cases the right to confrontation. For example, in a criminal case in which data copied from a hard drive is proffered, the defendant can still challenge hearsay found in the hard drive and can still challenge whether the information on the hard drive was placed there by the defendant."). Thus, this motion serves simply to authenticate the records in advance of trial to conserve the resources of the Court, the jury, and third-party witnesses.

A.     Secretary of State records, bank records, tax records, claims data, and audio recordings are domestic public documents that are sealed and signed and certified domestic records of a regularly conducted activity, admissible under FRE 902(1), 902(11), 902(13), and 803(6).

First, the government seeks to pre-authenticate various public and business records relevant to the defendants' involvement in the charged conspiracies.  Documents bearing "a seal purporting to be that of . . . any state, district, commonwealth, territory, or insular possession of the United States" and "a signature purporting to be an execution or attestation" may be self-authenticated pursuant to Federal Rule of Evidence 902(1). "Certified domestic records of a regularly conducted activity" may be self-authenticated pursuant to Federal Rule of Evidence 902(11).  The records must satisfy the business records requirements of Rule 803(6)(A)-(C), "as shown by a certification of the custodian . . . that complies with a federal statute or a rule prescribed by the Supreme Court."  Fed. R. Evid. 902(11).  Certain records are "not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness," including records of a regularly conducted activity.  Fed. R. Evid. 803(6).  Under Rule 803(6), a document qualifies as a business record if it was (A) "made at or near the time by – or from information transmitted by – someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation . . . [and] (C) making the record was a regular practice of that activity."  *Id.*  Rule 803(6) further provides that elements (A) through (C) may be satisfied by testimony of a records custodian "or another qualified witness," or "by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification," and provided that "the opponent does not show that the source of

information or the method or circumstances of preparation indicate a lack of trustworthiness." *Id.* If a certification is used, Rule 902 requires that the proponent of the certificate provide "written notice of the intent to offer the record" ensuring the other party has a "fair opportunity to challenge them." Fed. R. Evid. 902(11); *see also* 18 U.S.C. § 3505.[6]

"[T]here is no requirement that the witness who lays the foundation be the author of the record or be able to personally attest to its accuracy." *United States v. Armstrong*, 619 F.3d 380, 385 (5th Cir. 2010) (quoting *United States v. Brown*, 553 F.3d 768, 792 (5th Cir. 2008)). Instead, it is sufficient if the custodian who signs the certification "can explain the record keeping system of the organization and vouch that the requirements of Rule 803(6) are met." *Id.* (quoting *Brown*, 553 F.3d at 792). Moreover, an adequate foundation under Rule 803(6) may be established by circumstantial evidence. *See id.* Where businesses have an interest in assuring the reliability of the type of the record offered, the Rule 803(6) foundation may be satisfied with reference to the nature of the document itself. *See, e.g.*, *United States v. Dixon*, 132 F.3d 192, 197 (5th Cir. 1997) (admitting records pursuant to 803(6) even though the witness did not personally create the records or know whether the records were true or accurate because the witnessed testified "that the records were business records within the definition of Federal Rule of Evidence 803(6) and testified that he relied on the accuracy of these records in the ordinary course of business.").

---

[6] A Rule 902(11) certificate is not testimonial under the Confrontation Clause. *See United States v. Morgan*, 505 F.3d 332, 338-39 (5th Cir. 2007) (quoting *United States v. Ellis*, 460 F.3d 920, 927 (7th Cir. 2006)).

The types of records that the government plans to introduce pursuant to Rules 902(1), 902(11), 902(13), and 803(6), identified above, are routinely admitted under these Rules.  To successfully challenge the admissibility of these documents as business records, notwithstanding the existence of signed certifications, the defendants would need to demonstrate that the documents were not made and kept in the regular course of business by the custodial entity.  That notion strains credulity as applied here.

The Secretary of State records (GX 101–112) are domestic public documents, sealed and signed, for businesses established in Texas that were used as part of the alleged conspiracies and are thus admissible pursuant to Rule 902(1).  The bank records (GX 501–615) are account statements, signature cards, and other account-related records provided by various banks and financial institutions.  Similarly, the tax records (GX 626–683) are United States Internal Revenue Service for these companies, the defendants, and related individuals involved in this case.  Finally, the audio recordings (GX 914 and 917) are two recordings of customer calls between TD Ameritrade employees and Defendants James Noryian and David Nourian, respectively.   These recordings are accompanied by a certificate of authenticity of domestic records pursuant to Rules 902(11) and 902(13).

To the extent the defendants challenge the custodian certifications through which the government intends to authenticate these exhibits, there is no legitimate argument regarding their untrustworthiness.  The accompanying certifications, on their face, meet the requirements of Rules 902(11) and 902(13).  Accordingly, the Court should permit the government to admit these exhibits by affidavit and reject any objections to admission under Rule 803(6).

B. <u>The electronic exhibits are certified data copied from an electronic device, storage medium, or file, authenticated under Rule 902(14).</u>

Second, the government seeks to admit text messages and emails, which are records obtained from electronic devices.  Under Rule 902(14), "[d]ata copied from an electronic device, storage medium, or file, if authenticated by a process of digital identification, as shown by a certification of a qualified person" constitutes self-authenticating evidence.  Fed. R. Evid. 902(14).  "A proponent establishing authenticity under this Rule must present a certification containing information that would be sufficient to establish authenticity were that information provided by a witness at trial."   Fed. R. Evid. 902(14), advisory committee's note to 2017 amendment.

The certifications provided for government exhibits 701–702, 709–710, and 722–725 establish that the certifier—namely, a Forensic Examiner with the United States Postal Service Office of the Inspector General—(1) made a complete and accurate image of the electronic devices at issue; (2) was qualified to do so; and (3) confirmed that the imaging process created exact duplicates of the original devices, as contemplated by the Rules Committee.

The sole purpose of these certifications is to authenticate the records from an image of a phone belonging to Kimberly McCoy Necessary—an employee of Defendant James Noryian's during the conspiracy time period—and a computer storage device belonging to Defendant Christopher Rydberg.  Ms. Necessary provided signed consent to search her phone prior to the extraction.  The fact that the phone belonged Ms. Necessary will be established at trial though the testimony of Ms. Necessary herself.  Christopher Rydberg's

computer storage device was searched pursuant to a valid search warrant executed at the premises of Ability Pharmacy on May 12, 2016.  Evidence that the device belonged to Christopher Rydberg will be provided by a testifying agent at trial.  These exhibits have an accompanying affidavit that meets the requirements of Rule 902(14) and therefore should be deemed pre-authenticated.

## **CONCLUSION**

For the reasons set forth above, the Court should grant each of the government's Motions *in Limine*.

(continued on the next page)

Respectfully submitted,

LEIGHA SIMONTON
UNITED STATES ATTORNEY

GLENN S. LEON
CHIEF, FRAUD SECTION

*/s/ Alexander Thor Pogozelski*
Alexander Thor Pogozelski
Ethan T. Womble
Edward E. Emokpae
Trial Attorneys
Fraud Section, Criminal Division
U.S. Department of Justice
1100 Commerce Street, 3rd Floor
Dallas, TX 75242
Phone: (202) 510-2208
Alexander.Pogozelski@usdoj.gov

## CERTIFICATE OF CONFERENCE

I certify that on August 21, 2023, I conferred with defense counsel for the defendants

regarding these motions.  Each defendant's position with respect to each motion *in limine*

is set forth below:

- Defendant Jamshid Noryian does not oppose motions in *limine* numbered two (blaming the victims) and six ("only if it is limited to preclude arguments for jury nullification").  Defendant James Noryian opposes all other motions *in limine* in this filing.

- Defendant Dehshid Nourian does not oppose motions in *limine* numbered two (blaming the victims), six (jury nullification), and ten (authentication of evidence pursuant to Fed. R. Evid. 902).  Defendant Dehshid Nourian opposes all other motions *in limine* in this filing.

- Defendant Christopher Rydberg does not oppose motions in *limine* numbered two (blaming the victims), six ("only if it is framed as preclud[ing] arguments for jury nullification"), and ten (authentication of evidence pursuant to Fed. R. Evid. 902). Defendant Christopher Rydberg opposes all other motions *in limine* in this filing.

**The United States of America's Motions *in Limine*—Page 39**

- Defendant Michael Taba does not oppose motions in *limine* numbered two (blaming the victims), six (jury nullification), and ten (authentication of evidence pursuant to Fed. R. Evid. 902).  Defendant Michael Taba opposes all other motions *in limine* in this filing.

*/s/ Alexander Thor Pogozelski*
Alexander Thor Pogozelski
Trial Attorney
