IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMSHID NORYIAN (01)<br>  a.k.a. JAMES NORYIAN<br>DEHSHID NOURIAN (02)<br>  a.k.a. DAVID NOURIAN<br>CHRISTOPHER RYDBERG (03)<br>MICHAEL TABA (07) | CRIMINAL NO. 3:17-cr-155-L |

## THE UNITED STATES OF AMERICA'S RESPONSE TO DEFENDANTS' OBJECTIONS TO GOVERNMENT EXHIBITS

The United States of America files this Response to Defendants' Objections to the Government's Exhibits. (*See* Dkts. 589, 591, 596, and 602.) For the reasons stated below, Defendants' objections to the government's exhibits should be overruled and the government's proposed exhibits should be admitted at trial.

1. **200 Series – Claims Data & Insurance Documents**

The government's 200 series exhibits are all documents related to the two health care programs that were defrauded in this case: the Department of Labor's Office of Workers' Compensation Programs ("DOL-OWCP") and Blue Cross Blue Shield ("BCBS"). These documents include enrollment contracts, billing data, remittance vouchers, and provider manuals. Defendants object to these exhibits on relevance (Rule 402), prejudice (Rule 403), foundational (Rule 602), hearsay (Rule 802), and authentication (Rule 901) grounds.

All of these documents were created by the DOL, Blue Cross Blue Shield, or related contractors for those entities and are relevant to the fraud that was perpetrated against them here. The billing data and remittance vouchers capture the totality of the claims for reimbursement submitted by the defendants and the pharmacies they ran during the conspiracy time period. The enrollment contracts and provider manuals specify the scope of the agreement the defendants and pharmacies made with the programs, as well as certain rules and regulations the providers agreed to abide by. All of these exhibits are records of regularly conducted activity and thus qualify as exceptions to the rule against hearsay. *See* Fed. R. Evid. 803(6), 902(11). Likewise, all are authenticated pursuant to a certificate of authenticity or will be introduced and authenticated by the relevant representative for the entity to which they belong. *See* Fed. R. of Evid. 602, 901. Because of the high relevance of these exhibits in a case involving a conspiracy to defraud and specific counts of defrauding these programs, Defendants cannot show that any unfair prejudice would result or that it would substantially outweigh its probative value. Any dispute or objection regarding the content or impact of these documents will go to weight and is appropriate subject matter for cross-examination but does not affect their admissibility. *See United States v. Jardina*, 747 F.2d 945, 951 (5th Cir. 1984); *United States v. Dixon*, 132 F.3d 192, 196–97 (5th Cir. 1997). As it concerns any confusing content contained within the manuals under Rule 403, the government is prepared to redact that information as necessary.

2. **300 Series – Prescriptions**

The government's 300 series exhibits are various prescription documents that were seized pursuant to lawful search warrants executed on the premises of the pharmacies. Defendants object to these exhibits on relevance (Rule 402), prejudice (Rule 403), foundational (Rule 602), hearsay (Rule 802), and authentication (Rule 901) grounds. The prescriptions are directly relevant to the alleged conduct here, that the defendants conspired to and did commit health care fraud by paying doctors, like Dr. Taba, kickbacks to write medically unnecessary prescription medications, which were billed to the DOL and BCBS. (*See* Dkt. 162.) These prescriptions are some of the prescriptions that were bought and sold. They demonstrate the execution of this scheme on paper, and the witnesses who testify to them will corroborate and explain as much.

The government will establish that these documents are not hearsay or fall under an exception to hearsay for several reasons, including that some of the documents are (1) statements by party opponents; (2) statements by co-conspirators made during and in furtherance of the conspiracy; (3) records of a regularly conducted activity at the pharmacies; (4) present sense impression; (5) statement of a declarant's then existing state of mind, emotion, sensation, or physical condition; or (6) they are not being introduced for the truth of the matter asserted. *See* Fed. R. Evid. 801, 802, 803. All of these documents will be introduced and authenticated by either the witness who created the document or has personal knowledge of the document, or a testifying law enforcement witness who obtained the document through the execution of lawful search

warrants. *See* Fed. R. of Evid. 602, 901. Additionally, there is no danger of unfair prejudice substantially outweighing the highly probative value of this evidence of the prescriptions that served as the basis for the fraud in this case.

### 3. 400 Series – Substantive Count Evidence

The government's 400 series exhibits are documents related to Counts Two through Nine of the Superseding Indictment. (*See* Dkt. 162.) Specifically, these are the prescriptions issued to these various beneficiaries of the DOL-OWCP and BCBS, patient files of patients of Dr. Taba's, and summary charts of the voluminous claims data summarizing the claims for each of these beneficiaries. Defendants object to these exhibits on relevance (Rule 402), prejudice (Rule 403), foundational (Rule 602), hearsay (Rule 802), authentication (Rule 901), and improper-use-of-summary-chart (1006) grounds. The prescriptions are the actual prescriptions written by Dr. Taba and his co-conspirators in this case, which are directly relevant as the basis for the charged counts of health care fraud that correspond to each. Additionally, the patient files were provided by Dr. Taba pursuant to subpoena and are relevant to establish the lack of medical necessity for these prescriptions.

The government will establish that these documents are not hearsay or fall under an exception to hearsay for several reasons, including that the documents are (1) statements by party opponents; (2) statements by co-conspirators made during and in furtherance of the conspiracy; (3) records of a regularly conducted activity at the pharmacies; (4) statements made for medical diagnosis or treatment; or (5) absence of a

record of regularly conducted activity. *See* Fed. R. Evid. 801, 802, 803. All of these documents will be introduced and authenticated by either the witness who created the document or has personal knowledge of the document, or a testifying law enforcement witness who obtained the document through the execution of lawful search warrants. *See* Fed. R. of Evid. 602, 901. Finally, the underlying claims data that serves as the source for the count- and beneficiary-specific summary charts is voluminous, and "cannot be conveniently examined in court." Fed. R. Evid. 1006. That claims data will be admitted at trial, and Rule 1006 "does not require that it be literally impossible to examine the underlying records before a summary chart may be introduced." *United States v. Stephens*, 779 F.2d 232, 239 (5th Cir. 1985) (internal quotation marks omitted). There is also no basis for suggesting this highly relevant evidence of the actual count prescriptions at issue is substantially outweighed by the danger of unfair prejudice under Rule 403.

### 4. 500 Series – Bank Records

The government's 500 series exhibits are various bank and other financial records obtained during the investigation in this case. Defendants object to these exhibits on relevance (Rule 402), prejudice (Rule 403), foundational (Rule 602), hearsay (Rule 802), and authentication (Rule 901) grounds. As discussed before the prior trial in response to defendants' assertions that portions of these exhibits are outside the scope of the conspiracy, these bank accounts were all used in either the health care fraud conspiracy, the money laundering conspiracy, or both. (*See* Dkt. 162.) The objected-to exhibits cover numerous bank accounts and are voluminous, numbering in the thousands of pages. The

accounts themselves, and thus their records, are directly relevant to this case. The government should not be required to sift through and omit from these records any transactions or other contents that are not directly at issue in this case. Such picking and choosing would provide an incomplete picture of the finances of Defendants and the relevant entities and would invite an authenticity objection. Likewise, the excerpted portions of the records are not cumulative and will only be admitted as necessary, for example, if summary charts are excluded from evidence or to aid the jury by identifying specific checks or portions or bank records are admitted to establish the relevant criminal conduct. Additionally, all of these records are business records and authenticated pursuant to a certificate of authenticity or will be introduced and authenticated by the relevant representative for the entity from which they originated. *See* Fed. R. of Evid. 803(6), 602, 901.

      Defendants also object to Exhibits 612 and 613 on Confrontation Clause grounds. Those documents are records of Churchill Management, whom James Noryian, David Nourian, and their mother, Sherri Mofid, hired to manage investment accounts for them. These exhibits are business records under Rule 803(6) and are authenticated by a certificate of authenticity. *See* Fed. R. of Evid. 602, 803(6), 902(11). The law is clear that business records are "generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Melendez-Diaz v. Massachusetts*, 557 U.S.

305, 324 (2009); *United States v. Towns*, 718 F.3d 404, 410 (5th Cir. 2013). As such, these documents do not run afoul of the Confrontation Clause and are admissible.

### 5. 600 Series – Tax Records

The government's 600 series exhibits are tax and accounting records for various Defendants, pharmacies, pharmacy employees, and holding companies owned by the Noryians and others here. Defendants object to these exhibits on relevance (Rule 402), foundational (Rule 602), hearsay (Rule 802), and authentication (Rule 901) grounds. These documents are all relevant to Count 17 of the superseding indictment, which charges James Noryian, David Nourian, and Christopher Rydberg with Conspiracy to Defraud the United States through their submission of falsified tax returns. (*See* Dkt. 162.) These records are comprised of the actual tax returns submitted by the defendants, IRS transcripts of accounts, and financial documents prepared by accountants for the defendants based, in part, on false information they provided. (*See id.*) Most of these exhibits are official IRS records authenticated via a certificate of authenticity. *See* Fed. R. Evid. 902(11). Others will be introduced by accountants who were hired by the defendants. All of these records are business records and thus qualify as an exception to the rule against hearsay. *See* Fed. R. Evid. 803(6).

### 6. 700 Series – Emails and Text Messages

The government's 700 series exhibits are various text messages and emails from certain individuals who will testify at trial. Defendants object to these messages on relevance (Rules 402 and 403), hearsay (Rule 802), foundation (Rule 602), and

authentication (Rule 901) grounds.  These exhibits are directly relevant to the allegations in this case, for example, allegations that (1) Defendants James Noryian, Dehshid Noryian, and Christopher Rydberg paid doctors, including Defendant Michael Taba and Dr. Leslie Benson, in exchange for writing prescriptions; and (2) Defendants James Noryian and Michael Taba on a regular basis instructed employees of the pharmacies and employees of Defendant Michael Taba to fill out and sign prescriptions for compound pain creams on Dr. Taba's behalf, for Dr. Taba's patients, at Dr. Taba's office. To the extent the Court finds any contents of the messages or emails to be entirely irrelevant or unfairly prejudicial, the government is prepared to redact that information as necessary.

Defendant James Noryian further objects to Exhibit 725 as unfairly prejudicial under Rule 403 and as inadmissible character evidence under Rule 404(a) or evidence of other bad acts under Rule 404(b).  This objection is misplaced, as the messages the government plans to introduce go to the heart of the allegations here, including offering proof of knowledge, intent, lack of mistake or accident, plan, preparation, and evidence of the scheme itself. For example, some of the messages reflect that Defendant James Noryian put his family members' names on bank accounts and other-business related documents to shield his own involvement in fraudulent businesses that he operated and ran on a day-to-day basis. Such evidence and other messages included in the exhibit that give context to the conversation is evidence intrinsic to the alleged conduct in this case and should be admitted under Rule 404(a).  In the Fifth Circuit, other act evidence is intrinsic, not extraneous, "when the evidence of the other act and the evidence of the

crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode.'" *United States v. Rice*, 607 F.3d 133, 141 (5th Cir. 2010) (quoting *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990)). Intrinsic evidence is admissible to "complete the story of the crime by proving the immediate context of events in time and place and to evaluate all of the circumstances under which the defendant acted." *Rice*, 607 F.3d 133 at 141. For the same reason, this evidence poses no risk of *unfair* prejudice, as it merely exposes more inculpatory evidence of James Noryian's execution of the fraud scheme. *See* Fed. R. Evid. 403.

The government will establish that these documents are not hearsay or fall under an exception to hearsay for several reasons, including that the documents are (1) statements by party opponents; (2) statements by co-conspirators made during and in furtherance of the conspiracy; (3) records of a regularly conducted activity at the pharmacies; (4) they are not being introduced for the truth of the matter asserted; or (5) are present-sense impressions. *See* Fed. R. Evid. 801, 802, 803. To the extent any specific statements are hearsay within hearsay, the government will establish a basis to admit each statement. *See* Fed. R. Evid. 805. All of these documents will be introduced and authenticated by either the witness who created the document or has personal knowledge of the document, or a testifying law enforcement witness who obtained the document through the execution of lawful search warrants. *See* Fed. R. of Evid. 602, 901.

7. **800 Series – Search Warrant Evidence**

The government's 800 series exhibits are various documents that were seized pursuant to lawful search warrants executed on the premises of the pharmacies. Defendants object to these exhibits on relevance (Rule 402), prejudice (Rule 403), foundational (Rule 602), hearsay (Rule 802), authentication (Rule 901), and Confrontation Clause grounds. These documents generally fall into several categories: (1) documents related to money or financial records; (2) handwritten notes, letters, and emails; and (3) business records maintained by the pharmacies, including computer-generated reports of prescriptions, training materials, and other documents that relate to the day-to-day operations at the Defendants' businesses.  The commission reports, revenue reports, and promissory notes for the co-conspirator doctors are directly probative of the government's allegations that the pharmacy defendants paid the doctors here to write unnecessary prescriptions. The notes, letters, and emails provide both direct and circumstantial evidence to support the charges in the superseding indictment, which will be corroborated by witness testimony. None of the probative value of these documents are substantially outweighed by unfair prejudice.

The government will establish that these documents are not hearsay or fall under an exception to hearsay for several reasons, including that the documents are (1) statements by party opponents; (2) statements by co-conspirators made during and in furtherance of the conspiracy; (3) records of a regularly conducted activity at the pharmacies; (4) statements against interest; or (5) they are not being introduced for the

truth of the matter asserted. *See* Fed. R. Evid. 801, 802, 803, 804. All of these documents will be introduced and authenticated by either the witness who created the document or has personal knowledge of the document, or a testifying law enforcement witness who obtained the document through the execution of lawful search warrants. *See* Fed. R. of Evid. 602, 901. Again, any dispute or objection regarding the content or impact of these documents will go to weight and is appropriate subject matter for cross-examination but does not affect their admissibility. *See Jardina*, 747 F.2d at 951; *Dixon*, 132 F.3d at 196–97.

Defendant Michael Taba also objects to Exhibits 848 and 863 on Confrontation Clause and *Bruton* grounds. Those documents are records of the pharmacies made during the regular course of their business. None can be said to have been created "for the purpose of establishing or proving some fact at trial." *Melendez-Diaz*, 557 U.S. at 324. As such, they are not testimonial and do not run afoul of the Confrontation Clause. Additionally, because the documents are not attributable to any one defendant, they are not properly confessions by a co-defendant and subject to the *Bruton* doctrine. Even if they were, any such prejudice could be cured via redaction, as the documents are "not incriminating on [their] face," and become incriminating "only when linked with [other] evidence." *Richardson v. Marsh*, 481 U.S. 200, 207–08 (1987); *see also Gray v. Maryland*, 523 U.S. 185, 196 (1998) (clarifying the manner in which redactions must be made in order to safeguard Sixth Amendment confrontation rights).

8. **900 Series - Miscellaneous**

The government's 900 series exhibits are miscellaneous evidence, including photographs, audio recordings, and physical exhibits. Defendants object to these exhibits on relevance (Rule 402), prejudice (403), foundation (Rule 602), hearsay (Rule 802), authentication (Rule 901), best evidence (Rule 1002), and Confrontation Clause grounds.

The photographs here depict the pharmacies, prescription cream bottles that were prescribed absent medical need, and assets purchased with fraudulent proceeds—all directly relevant to the setting and conduct at issue and none unfairly prejudicial. These photographs will be introduced and authenticated at trial by a witness with personal knowledge of what is depicted in the photographs. *See* Fed. R. Evid. 602, 901. Additionally, the "purpose of the best evidence rule . . . is to prevent inaccuracy and fraud when attempting to prove the contents of a writing." *United States v. Yamin*, 868 F.2d 130, 134 (5th Cir. 1989); Fed. R. Evid. 1002, advisory committee notes (noting that the best evidence rule is not applicable when a witness "adopts the picture as his testimony, or . . . uses the picture to illustrate his testimony," because "no effort is made to prove the contents of the picture"). Further, the Rules clarify that "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit a duplicate." Fed. R. Evid. 1003. For these reasons, introduction of the photographs through a witness with knowledge does not violate the best-evidence rule.

Exhibits 914 through 922 are recordings of conversations between Defendant James Noryian or Defendant Deshid Noryian and certain individuals who will testify at trial, as well as written transcripts and captioned video transcripts of those recordings. As an initial matter, as noted in the government's proposed jury instructions (Dkt. No. 572 at 36), the government is only seeking to admit the written transcripts and captioned video transcripts for the limited purpose of aiding the jury in following the content of the recording and has provided that proposed instruction to the Court. All of these recordings involve defendants in this case talking about the charged conduct; therefore, their words are relevant non-hearsay under Rule 801(d)(2). The individuals on the other end of the conversations recorded will testify at trial and will be subject to cross-examination, thus, no Confrontation Clause issues exist. Their words are not offered for the truth of the matter asserted but to show the context in which the party-opponent statements were made and the effect they had on the Defendant listeners.

Finally, the physical exhibit items include prescription pain cream medication tubes, prescription vitamin bottles, a Louis Vuitton handbag, and the paper prescriptions written by Dr. Taba and the other doctors who were paid to write medically unnecessary prescriptions. These exhibits are relevant as physical evidence or *corpora delicti* of the crime here. *See corpus delicti*, *Black's Law Dictionary* (10th ed. 2014) ("the material substance on which a crime has been committed; the physical evidence of a crime"). All of these exhibits will be introduced and authenticated by a relevant witness with personal knowledge. *See* Fed. R. of Evid. 602, 901. There is also no argument that these items,

which were central to the alleged criminal conduct here, pose any risk of unfair prejudice or any other basis under Rule 403 that would substantially outweigh their probative value. *See* Fed. R. Evid. 403.

### 9. 1000 Series – Summary Charts

The government's 1000 series exhibits are summary charts of voluminous records in this case. Defendants object to these exhibits on relevance (402), cumulative (403), foundational (602), hearsay (802), authentication (901), originality (1002), and improper-use-of-summary-chart (1006) grounds. The summary charts at issue cover voluminous claims data and bank records that form the basis for all of the counts in the Superseding Indictment. (*See* Dkt. 162.) These records are directly relevant for the same reasons articulated above for the 200, 500, and 600 series exhibits. *See supra*. The information contained in the summary charts is not cumulative under Rule 403, as Rule 1006 explicitly allows summary charts for voluminous evidence to aid the jury. *See* Fed. R. Evid. 403, 1006. Each of these charts will be introduced by a government witness who created the chart and reviewed the underlying source of the information contained on it. *See* Fed. R. Evid. 602, 901. Additionally, all of the underlying records are business records and thus, the charts are not tainted by any inadmissible hearsay. *See* Fed. R. Evid. 803(6). Notably, all of the underlying exhibits for the summary charts here are admissible and will be admitted by the Government at trial and have been produced to the defendants; therefore, Rule 1002 is satisfied. *See* Fed. R. Evid. 1002. Finally, despite Defendants' objections to the contrary, all of the underlying exhibits for the summary

charts are voluminous, and "cannot be conveniently examined in court." Fed. R. Evid. 1006. Courts regularly admit summary charts in precisely the same scenario. *See, e.g.*, *United States v. Mazkouri*, 945 F.3d 293, 301 (5th Cir. 2019) (affirming the admission of summaries of Medicare claims data where the underlying data was properly introduced into evidence); *United States v. Fernandez*, 392 F. App'x 743, 746 (11th Cir. 2010) (same). As such, all of the summary charts are admissible and should be admitted.

Respectfully submitted,

LEIGHA SIMONTON
UNITED STATES ATTORNEY

GLENN S. LEON
CHIEF, FRAUD SECTION

*/s/ Ethan Womble*
ETHAN WOMBLE
EDWARD E. EMOKPAE
ALEXANDER T. POGOZELSKI
Trial Attorneys
Fraud Section, Criminal Division
U.S. Department of Justice
1100 Commerce Street, 3rd Floor
Dallas, TX 75242
Phone: (214) 258-0468
ethan.womble@usdoj.gov