IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMSHID NORYIAN (01)<br>　a.k.a. JAMES NORYIAN<br>DEHSHID NOURIAN (02)<br>　a.k.a. DAVID NOURIAN<br>CHRISTOPHER RYDBERG (03)<br>MICHAEL TABA (07) | CRIMINAL NO. 3:17-cr-155-L |

### THE UNITED STATES OF AMERICA'S OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE*

The United States files this opposition to Defendants Michael Taba, Jamshid Noryian, and Christopher Rydberg's Motions *in Limine*. For the reasons discussed below, the Court should deny each opposed motion *in limine*.

**I.   Defendants' Opposed Motions *in Limine***

Defendant Michael Taba moves *in limine* to preclude (1) any testimony regarding a doctor's standard of care as a substitute for *mens rea*; (2) the government's purported reliance on claims data as a "substitute for actual prescriptions"; and (3) any potential speculation by government witnesses. Defendant Christopher Rydberg similarly moves the Court to preclude any testimony by government witnesses about "everyone's" or the whole "family's" knowledge regarding the charged crimes. Finally, Defendant Jamshid Noryian moves this Court to exclude evidence regarding any defendant or family member's involvement in operating or serving as the landlord for gentlemen's clubs. The government addresses each in turn.

### A. The Court Should Deny Defendant Taba's Motion to Preclude Testimony Regarding Doctors' Standard of Care

Defendant Taba first moves this Court to exclude any testimony regarding the "standard of care" for doctors prescribing compound creams, arguing that to permit such testimony would be tantamount to substituting the medical "standard of care" for the *mens rea* requirements of the charged crimes. This argument is misplaced for several reasons.

First, this Court previously rejected a similar challenge by Defendant Taba prior to the first trial. (Dkt. No. 375, arguing that the government "seeks to substitute Dr. Taba's intent with that of an expert's opinion"); Tr. of Pretrial Conference, at 77-78. Although his previous challenge was styled as a motion to exclude the testimony of the government's expert, the current motion *in limine* addresses the same topics and seeks to exclude the same type of testimony for the same reasons. The Court should once again deny Defendant Taba's motion *in limine* seeking to preclude any testimony regarding the "standard of care" for prescribing compound creams.

Second, testimony regarding the standard of care is relevant because it provides important context for the jury and helps establish that Defendant Taba prescribed compound creams without a legitimate medical basis. The Fifth Circuit addressed this issue in *United States v. Patel*, 485 Fed. App'x 702, 718 (5th Cir. 2012). It held, overruling an objection to expert testimony, that the district court properly admitted such testimony regarding "a physician's duty of care . . . in order to assist the jurors in understanding the standards to which the medical profession generally holds itself." *Id.*

at 718.  The Fifth Circuit explained that, "'[k]nowing how doctors generally ought to act is essential for a jury to determine whether a practitioner has acted not as a doctor, or even as a *bad* doctor, but . . . without a legitimate medical justification.'"  *Id.* (citation omitted) (alteration in original).  It further elaborated that, "[a]ny 'evidence that a physician deviated drastically from accepted medical standards is probative of criminal liability.'"  *Id.* (citation omitted).

    Here, as in *Patel*, evidence that Defendant Taba "deviated drastically from accepted medical standards is probative of [his] criminal liability."  *Id.*  The defendant is charged with conspiracy to commit healthcare fraud and health care fraud.  Whether Defendant Taba, along with other medical providers, wrote prescriptions without a legitimate medical basis is central to the allegations in the superseding indictment.  It is for this reason that expert testimony explaining when it is appropriate to prescribe compound creams, and when it is not appropriate to prescribe compound creams, has been admitted in similar compounding cases tried in this district.  *See, e.g.*, *United States v. Carpenter*, Case No. 19-CR-452-X (N.D. Tex. 2019) (permitting Dr. Xavier Jiminez to testify regarding the standards for prescribing compound creams); *United States v. Hall*, Case No. 18-CR-623-S (N.D. Tex. 2018) (same).  In *Hall*, the defendants moved to exclude expert testimony concerning compound medications and when they should be prescribed, arguing, in part, that such testimony was irrelevant and not helpful to the jury.  The court denied that pre-trial motion and ultimately permitted Dr. Jimenez to testify on these very topics.

Third, Defendant Taba is incorrect that the government intends to rely on testimony regarding the "standard of care" as a "substitute" for the *mens rea* requirements of conspiracy to commit health care fraud and health care fraud.  The proposed testimony of Dr. Xavier Jimenez concerns whether the prescriptions at issue were legitimately prescribed.  His testimony will help the jury understand what compounding is and when prescribing compound medications is medically appropriate, and when it is not.  Dr. Jimenez will also testify to his review of specific prescriptions issued by Dr. Taba and the absence of any justification for those prescriptions in the patients' medical records.  This testimony will assist the jury in understanding a niche field of medicine and show that there was no objective medical basis for Dr. Taba's aberrant prescribing practices.  It will also help the jury understand how the scheme worked and prove specific instances of health care fraud.  Importantly, however, Dr. Jiminez will *not* testify about Defendant Taba's state of mind or opine whether his conduct was knowing and willful.  Instead, the government will present witness testimony and documentary evidence proving that Dr. Taba acted knowingly and willfully, as detailed below.

The government plans to call witnesses and introduce evidence showing that Defendant Taba agreed to accept illegal kickbacks from his co-defendants in exchange for writing medically unnecessary prescriptions for expensive compound creams and sending those prescriptions to Ability Pharmacy, Industrial & Family Pharmacy, and Park Row Pharmacy (collectively, the "Pharmacies").  The evidence will show that Defendant Taba started sending prescriptions to Ability Pharmacy right around the time he began

receiving kickback payments from his co-defendants, and that, in total, he received more than $800,000 in kickbacks during the course of the conspiracy. The government will also introduce evidence that the defendants attempted to conceal these illegal kickbacks as "loans," demonstrating their knowledge that the payments were illegal. Additionally, a federal agent will testify that Defendant Taba lied during his pre-indictment interview. For example, the agent will testify that Defendant Taba (1) initially denied having any affiliation with Ability Pharmacy or Park Row Pharmacy; (2) insisted the payments he received from his co-defendants were loans; and (3) claimed that he began prescribing compound creams in lieu of opioids, contrary to the medical records of his patients.

      Fourth, and finally, Defendant Taba seeks to exclude testimony from government witnesses regarding the "standard of care" while simultaneously seeking to call his own purported experts to testify on this exact same subject. In his Rule 702 disclosure, Defendant Taba noticed two physician witnesses he intends to call to testify that his prescribing practices were "within acceptable standard of care" and otherwise appropriate under such standards. (Dkt. 599 at 3, 5.) As the Fifth Circuit recognized in *Patel*, by doing so, he has "invited [such] testimony with his defense strategy[.]" 485 Fed. App'x at 718. The Court should not permit Defendant Taba to have it both ways.

> **B. The Court Should Deny Defendant Taba's Objection to the Government's Purported Reliance on Claims Data as a "Substitute for Actual Prescriptions"**

      Next, Defendant Taba objects to what he characterizes as the government's intention to "rely upon claims data for a large portion of the orders for the topical compounding creams that are the subject of the charges in the [superseding] indictment."

(Dkt. 598 at 4.) This particular motion *in limine* appears to be more appropriately characterized as an objection to the summary charts the government will present at trial: "Dr. Taba objects to the introduction of any summary chart prior to the government establishing that the summary was based on Dr. Taba's orders or prescriptions."[1] (Dkt. 598 at 5.)

First, and importantly, the government intends to introduce at trial all of the prescriptions signed by Defendant Taba that were seized during the execution of search warrants at the Pharmacies.

Second, Dr. Taba misunderstands the summary charts on the government's exhibit list. The two relevant summary charts – Exhibits 1001 and 1002 – are summaries of the Department of Labor's Office of Workers' Compensation Programs ("DOL-OWCP") claims data for the Pharmacies. These summaries show the total amounts billed to DOL-OWCP for prescriptions filled by the Pharmacies, and the total amounts paid by DOL-OWCP for those prescriptions. They are meant to aid the jury in understanding the

---

[1] In passing, Defendant Taba insists the government should be required to call "each patient regarding their special medical condition that required the topical compounding cream." (Dkt. 598 at 5.) It would be impractical and a waste of judicial resources to call every patient impacted by the scheme at trial. *Cf. United States v. Ezukanma*, 756 F. App'x 360, 373 (5th Cir. 2018) (holding in the context of sentencing that "[i]t is not 'reasonably practicable' to make an individual determination of the validity of the claims, as it would be inefficient, expensive, and problematic to ask the Government to review over 90,000 claims and interview 4,200 Medicare beneficiaries to establish a loss calculation."). Indeed, the government is not aware of a single health care fraud case involving a broad conspiracy, such as this one, where a court required that every impacted patient had to testify to support a conviction for conspiracy to commit health care fraud. And the defendant points to none. Beyond this, such evidence is not required to prove that Defendant Taba conspired to commit health care fraud and committed health care fraud. To establish a violation of 18 U.S.C. § 1349, the government must prove that there was an agreement to commit health care fraud, not that every underlying claim was false.

voluminous billing data in this case. The charts do not refer to or mention Defendant Taba and are thus not misleading in any way, despite his argument to the contrary.

The claims data here is voluminous, was maintained in the regular course of DOL-OWCP's business, and is accompanied by business records affidavits signed by the agency's records custodian. This claims data and the accompanying business record affidavits have been provided to the defense. Because the government will establish at trial that the charts fairly and accurately summarize this voluminous claims data, they are admissible. Dr. Taba and his co-defendants will have ample opportunity to cross-examine government witnesses regarding the claims data and summaries of that data. His argument goes merely to the weight – not admissibility – of the charts. The Court should deny his motion *in limine*.

### C. The Court Should Deny Defendants Taba and Rydberg's Motions to Preclude Anticipated Speculation by Government Witnesses.

Both Defendants Taba and Rydberg seek a pre-trial ruling from the Court excluding testimony they describe as "speculative" and not based on personal knowledge. Defendant Taba claims that the testimony of government witness Dr. Kevin Williams will be speculative because Dr. Williams has no "personal knowledge about Dr. Taba and his medical practice." (Dkt. 598 at 6.) Defendant Rydberg focuses on two potential government witnesses, Robbie Jossa and Dr. Marjaneh Hedayat, who he claims are likely to testify in a speculative fashion about "everyone's" or the entire family's knowledge concerning the allegations in the superseding indictment.

**The United States of America's Opposition to Defendants' Motions *in Limine* —Page 7**

As a threshold matter, the government, of course, agrees that any witness called by any party may only testify about matters within their personal knowledge or, in the case of expert witnesses, within their expertise. Fed. R. Evid. 602, 701, 702. The anticipated testimony of these particular witnesses will be based on their personal knowledge. Dr. Williams, for example, will testify to conversations he had with the defendants, including Defendant Taba, as well as events and conduct he personally witnessed. Robbie Jossa and Dr. Marjaneh Hedayat will similarly testify to statements made by certain defendants in their presence and conduct they actually observed.

Defendants Taba and Rydberg's objections to certain government witnesses' anticipated testimony are based on interview reports of those witnesses, which are summaries of interviews prepared by agents and, as such, not verbatim recitations of the witnesses' words. These types of objections are premature and themselves based on speculation about what government witnesses may say at trial. They are properly raised at trial, when the Court will have the benefit of the questions asked, the witnesses' earlier testimony, and the foundation laid for their testimony. The Could should therefore deny Defendants Taba and Rydberg's motions *in limine* and wait to rule as necessary during trial.

### D. The Court Should Deny Defendant Jamshid Noryian's Motion to Preclude Any Testimony Regarding Gentlemen's Clubs.

Finally, Defendant Jamshid Noryian moves the Court to "exclude evidence of his or any other family member's involvement in Gentlemen's clubs/strip clubs, including . . . owning or operating as the landlord for strip club businesses or collecting rent from

these businesses as this evidence is irrelevant and unduly prejudicial." (Dkt. 588 at 1.) The defendant is wrong on both counts, as this evidence is both highly relevant and not unduly prejudicial.

The government alleges that, as part of the charged health care fraud conspiracy, Defendants Jamshid Noryian, Damshid Noryian, and Christopher Rydberg paid kickbacks to doctors to induce them to write and refer prescriptions for expensive and unnecessary compound medications to the Pharmacies. Although many of these kickbacks were paid by check, the evidence will show that Defendant Jamshid Noryian also paid kickbacks in cash. Gentlemen's clubs are one of the few modern-day businesses that remain cash-based, and the government expects several witnesses to testify that Defendant Jamshid Noryian exploited this to carry out the charged crimes. He did so by obtaining large amounts of cash from his gentlemen's club tenants and using that cash to pay kickbacks to doctors. Indeed, one government witness testified at the first trial that Defendant Jamshid Noryian told him that he wrote cashier's checks to the tenants operating gentlemen's clubs as a means to obtain cash to pay doctors. *See* Trial Tr., Vol. 6B, Oct. 26, 2022, at 29.[2] This witness also testified that an owner/operator of one of these clubs routinely visited Ability Pharmacy to deliver duffle bags filled with cash. *Id.* at 30-31. That same witness is further expected to testify that he observed Defendant Jamshid Noryian pay a kickback to the son of a doctor co-conspirator in cash. Other witnesses will corroborate this testimony; for example, another witness is expected

---

[2] Financial records show that at least one of these tenants received a cashier's check in the amount of $200,000 from the family.

**The United States of America's Opposition to Defendants' Motions** *in Limine* **—Page 9**

testify to seeing Defendant Jamshid Noryian with large amounts of cash in his office at Ability Pharmacy.  Evidence that Defendant Jamshid Noryian leased out properties to gentlemen's clubs is necessary to explain how he got the cash to pay certain kickbacks, which would otherwise remain unexplained by bank records.  Additional witnesses will testify that Defendant Jamshid Noryian met with doctor co-conspirators at these gentlemen's clubs to conduct their illegal business.  The government will not present salacious testimony about the entertainment provided at these gentlemen's clubs.  The evidence instead will focus solely on how cash-based gentlemen's clubs were exploited to further and conceal the scheme.

All of this expected testimony is directly relevant to the allegations in the superseding indictment.  That Defendant Jamshid Noryian utilized gentlemen's club tenants to gather large amounts of cash and to conceal his criminal conduct is admissible to "complete the story of the crime by proving the immediate context of events in time and place" and to "evaluate all of the circumstances under which the defendant acted." *United States v. Rice*, 607 F.3d 133, 141 (5th Cir. 2010); *see also United States v. Gonzalez*, 328 F.3d 755, 759 (5th Cir. 2003).  Precluding this evidence and forcing witnesses to testify solely about "tenants" or "tenants' businesses" would confuse the jury and prevent witnesses from testifying about critical events and conduct they personally witnessed and which are directly relevant to the charged crimes.

Second, and contrary to Defendant Jamshid Noryian's assertion, this highly relevant evidence is not unduly prejudicial and would not have an "undue tendency to suggest a decision on an improper basis" under Federal Rule of Evidence 403.  To claim

that a properly instructed jury, in 2023, would convict the defendants of fraud, money laundering, and tax evasion based on the fact they leased properties to gentlemen's clubs and carried out business at those clubs to further the conspiracy is not credible.  Courts have frequently admitted far more prejudicial evidence against defendants when that evidence was similarly necessary to complete the story of the crimes charged.  *See, e.g.*, *Rice*, 607 F.3d at 141 (upholding district court's admission of evidence that defendant and his co-conspirators "attempted to rob a woman," "tried to rob a pizza delivery man," attempted to rob an elderly couple," and "sought to rob a convenience store"); *Gonzalez*, 328 F.3d at 759 (upholding district court's admission of evidence regarding defendant's "history of arrests for transporting narcotics").  The probative value of this evidence – which helps prove that Defendant Jamshid Noryian had ready access to large amounts of cash and used that cash to pay kickbacks to doctors and conceal this illegal conduct – far outweighs any claimed prejudice.  The Court should deny Defendant Jamshid Noryian's motion *in limine* on this ground.

## II.     Defendants' Unopposed Motions *in Limine*

The government does not oppose Defendant Taba's motions *in limine* to exclude evidence of adverse administrative actions and to exclude evidence concerning a witness's criminal convictions that are more than ten years old.  Similarly, the government does not oppose Defendant Jamshid Noryian's motion *in limine* to preclude any party from referring to the prior trial as such.  The government proposes that the prior trial be referred to as "the prior hearing," if testimony from the prior trial is referenced in the presence of the jury.

III.   Conclusion

For the reasons set forth above, the Court should deny Defendants Michael Taba, Jamshid Noryian, and Christopher Rydberg's Motions *in Limine* on these topics.

Respectfully submitted,

LEIGHA SIMONTON
UNITED STATES ATTORNEY

GLENN S. LEON
CHIEF, FRAUD SECTION

*/s/ Alexander Thor Pogozelski*
Alexander Thor Pogozelski
Ethan T. Womble
Edward E. Emokpae
Trial Attorneys
Fraud Section, Criminal Division
U.S. Department of Justice
1100 Commerce Street, 3rd Floor
Dallas, TX 75242
Phone: (202) 510-2208
Alexander.Pogozelski@usdoj.gov