IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| v. | § | Criminal Case **3:17-CR-155-L** |
| | § | |
| **JAMSHID NORYIAN (01)** | § | |
| **DEHSHID NOURIAN (02)** | § | |
| **CHRISTOPHER RYDBERG (03)** | § | |
| **MICHAEL TABA (07)** | § | |

## ORDER ON PRETRIAL MOTIONS AND OBJECTIONS

On September 7, 2023, the court held a pretrial conference in this case during which it discussed various matters, including the parties' pretrial motions and objections. For the reasons explained, the court **rules** as follows:[1]

**I.     Government's Motion in Limine (Doc. 604)**

- **Government's Decision Not to Call a Particular Witness:** The motion as to this issue is **granted** as unopposed.[2]

- **Blaming Victims for Fraud:** The motion as to this issue is **granted** as unopposed. *If Defendants believe that the Government has opened the door by eliciting testimony regarding the high prices of compound creams or prescriptions and wish to address this issue on cross-examination, they must first approach the bench and obtain a ruling.*

---

[1] During the pretrial conference, the court indicated that it would carry certain motions and take certain matters under advisement. To the extent this order rules on rather than continuing to carry an objection or taking an issue under advisement, it is because the court has made a decision after further consideration of the issues presented.

[2] *See United States v. Chapman*, in which the Fifth Circuit explained as follows:

> The long-standing rule in this circuit is that any inference from a party's failure to call a certain witness equally available to both parties is impermissible. . . . However, mere physical presence at the trial or accessibility for service of a subpoena does not determine a potential witness's availability. Rather, his availability may well depend, among other things, upon his relationship to one or the other of the parties, and the nature of the testimony that he might be expected to give. . . . When a witness is controlled by one party, failure to call the witness, if his testimony would elucidate facts in issue, creates an inference which the jury is permitted to draw against that party.

435 F.2d 1245 (5th Cir. 1970); *see also United States v. Santos*, 589 F.3d 759, 764 (5th Cir. 2009) (discussing *Chapman*).

**Order – Page 1**

- **Suggestion that Prosecutor or Agent Engaged in Misconduct:** The motion as to this issue is **granted in part and denied in part**. It is **granted** with respect to prosecutor misconduct and **denied** with respect to agent misconduct or an agent's conduct pertaining to the thoroughness of his or her investigative efforts. The court clarifies, however, that **Defendant Taba is precluded from and must not reference or allude to any of the matters raised in his motion for leave to file a motion to suppress, proposed motion to suppress, motion for leave to disclose grand jury transcripts, and proposed motion to disclose grand jury transcripts**, as the court has already denied the motions for leave to file these motions by separate order. The deadline for seeking to suppress Defendant Taba's statements to agents expired more than two years ago, and as explained in the court's prior order, Defendant Taba failed to show good cause or prejudice for resurrecting the motions deadline on the eve of trial. The court will not allow him to do an "end-run" around its order by eliciting witness testimony during the trial or arguing in the presence of the jury regarding the voluntariness of his statements or the legality of the interview, including whether agents misled him about the purpose of the interview, which is not illegal.[3] Moreover, while the inclusion of such matters in a timely motion to suppress would have been appropriate for the court to decide, they are not permissible matters for the jury to decide. Any suggestion during the trial that Defendant Taba's statements to agents were not voluntary or legally obtained would only serve to improperly influence the jury by gaining their sympathy (jury nullification) and unnecessarily confuse the jury into believing that the voluntariness of Defendant Taba's statements is a proper defense for them to consider in reaching their verdict. For similar reasons, **Defendant Taba must not reference or allude to** any of the matters pertaining to the Government's dismissal of the charges against Ashraf Mofid and Leyla Nourian, the reasons for its decision to dismiss the charges against these persons, or his belief that the Government's theory of the case is flawed as a result of the dismissal of the charges against these persons. Any probative value of such evidence or the legality of the agents' interview of Defendant Taba would be substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [and] misleading the jury[.]" Fed. R. Evid. 403. Moreover, the time for moving to dismiss the charges in the Superseding Indictment on this ground, a legal matter for the court to decide, based on the dismissal of the charges against Ashraf Mofid and Leyla Nourian in October 2022, has long since passed. If Defendant Taba believes that the Government has not proved, beyond a reasonable doubt, all of the elements of the charges against him as required to obtain a guilty verdict, then he can move for a judgment of acquittal at the appropriate time. **If any Defendant intends to move for a judgment of acquittal, they must do so outside the presence of the jury.**

- **Out-of-Court Hearsay Statements by Defendants:** The motion as to this issue is **denied.** Hearsay objections can be addressed during the trial through the normal process. As the court explained, it will not allow the attorneys to ask any witness to testify to the contents

---

[3] *See Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (holding that officer's lies to the defendant that his fingerprints were found at crime scene had "nothing to do with whether [the defendant] was in custody for purposes of *Miranda* rule"); *see also J.D.B. v. North Carolina*, 564 U.S. 261, 271 (2011) ("[T]he subjective views harbored by either the interrogating officers or the person being questioned are irrelevant.") (internal quotations removed); *United States v. Rahim*, 382 F. Supp. 3d 561, 572 (N.D. Tex. 2019) (concluding based on *Mathiason* and *J.D.B.* that whether agents admittedly lied to the defendant while interviewing him did not affect the noncustodial nature of the interview).

**Order – Page 2**

of any exhibits before the exhibits are admitted. Proceeding in this way will eliminate the Government's concern regarding potential prejudice in allowing the jury to hear inadmissible hearsay statements or information contained, for example, in e-mails written by Defendants.

- **Specific Acts of "Good Conduct":** The motion as to this issue is **granted in part and denied in part.** The Government moves to exclude evidence of "specific acts of good conduct, including evidence of: (1) legitimate prescriptions or billing by the defendants; and (2) the provision of legitimate services by a defendant." Doc. 604.

    - "Evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant" unless the defendant's character is an element of the charged offense. *United States v. Ylda*, 643 F.2d 348, 352 (5th Cir. 1981) (citation omitted). In *United States v. Marrero*, 904 F.2d 251 (5th Cir. 1990), the Fifth Circuit determined that evidence of prior good acts in the form of evidence of proper billing was not relevant to insurance fraud charged in that case. *Id.* at 259. The defendant in *Marrero* "sought to prove that her good character was inconsistent with the necessary criminal intent by introducing evidence of specific acts of good character" and argued that "the evidence she proffered was essential to her defense of lack of motive or intent." *Id.* The Fifth Circuit disagreed because "Marrero's character in this case was simply not an essential element of the charges against her." *Id.* The court explained, "Marrero sought at trial to use specific acts circumstantially to prove lack of intent. Such a tactic is not only disfavored, it is not permitted under Rule 405(b)." *Id.* The court then added, "The evidence of specific acts of good character which Marrero sought to admit into evidence was irrelevant to the charges contained in the indictment." *Id.* (citations omitted). The Fifth Circuit further explained that "**[t]he fact that Marrero did not overcharge in every instance in which she had an opportunity to do so is not relevant to whether she, in fact, overcharged as alleged in this indictment**." *Id.* at 260 (emphasis added).

    - The reasoning in *Marrero* applies with equal force in this case. While Defendants James Noryian, Dehshid Nourian, and Chris Rydberg indicate in their Joint Response to the Government's Motion in Limine that they do not intend to introduce evidence at trial for this improper purpose, it appears that Defendant Taba, who filed a separate response, intends to do so even if such evidence is not directly responsive to an exhibit or other evidence by the Government regarding specific instances in which he is alleged to have acted unlawfully. Although he moved to preclude Government witness testimony regarding his state of mind and intent, it appears that he seeks to prove the same thing through his patient witnesses in contravention of *Marrero* by eliciting testimony regarding instances of other uncharged conduct when he acted lawfully. Even if Defendants could establish that they acted lawfully 80 percent of the time, such evidence would not be relevant to whether they intended to engage in the conduct alleged that forms the bases for health care fraud offenses charged. *See id.* at 260. Accordingly, the Government's motion in this regard is **granted** such that **Defendants must not reference, elicit,**

Order – Page 3

> or present evidence of their lawful conduct *on other occasions* as circumstantial proof that they did not intend to act unlawfully in the instances identified by the Government's evidence.

- On the other hand, as Defendants James Noryian, Dehshid Nourian, and Chris Rydberg correctly note, *Marrero* **is not so broad as to preclude them from rebutting the Government's evidence to show that they acted lawfully *in the circumstances identified by the Government that form the bases for the charges in the Superseding Indictment*.** Accordingly, the Government's motion in this regard is **denied**.

- Defendants James Noryian, Dehshid Nourian, and Chris Rydberg also express concern that the Government's motion is so broad that it could be construed as seeking to preclude them from presenting evidence or otherwise arguing to the jury that they believed that the pharmacies were legitimate enterprises. Defendants state that they anticipate eliciting testimony through certain witnesses regarding "the suggestion that a defendant believed the pharmacies were legitimate" or "did not have knowledge of any wrongdoing, or otherwise had no basis to believe the pharmacies were fraudulent." Defs.' Resp. 9 (Doc. 617). **Defense evidence rebutting evidence presented by the Government regarding their state of mind or knowledge does not fall under the "good conduct" umbrella and is permissible as long as it is otherwise admissible and not based in speculation or inadmissible hearsay.** Accordingly, to the extent that the Government seeks to exclude such evidence, its motion is **denied**.

- During the pretrial conference, Defendant Rydberg also expressed concern that it was not clear whether the Government's motion based on "good conduct" was intended to encompass his involvement in real estate. As this issue was not briefed, it is not clear what evidence of conduct that Defendant Rydberg might seek to introduce at trial. **Because the court lacks sufficient information to address this issue, it makes no ruling at this time and will revisit it upon request of the parties during the trial.**

- *Further, with respect to the two matters that the court denied the Government's motion based on "good conduct," it is not necessary for Defendants to approach the bench beforehand, as any disagreement by the parties in this regard can be handled through the normal procedure for objections during the trial as evidence develops, and, if necessary, any potential prejudice or confusion can be addressed via a limiting instruction to the jury.*

- **Jury Nullification:** The motion as to this issue is **granted in part and denied in part.** It is **granted** *to the extent that the court will not allow any party to offer any argument, testimony, or evidence for the sole purpose of improperly gaining the jury's sympathy to obtain a verdict that is based on emotion or sympathy rather than the law provided by the court and the facts found by the jurors based on the evidence admitted*. It is **denied** as overly broad *to the extent that the Government seeks to preclude all evidence regarding*

Order – Page 4

*Defendants' backgrounds*. As the court explained, allowing both the Government *and* the defense to briefly develop the background of the agents' investigation and the backgrounds of the individual Defendants is usually necessary for jurors to put in context trial testimony and evidence, and such evidence does not fall into the category of classic jury nullification. **Any background evidence by the Government or Defendants, however, must be relevant, brief, and not unnecessarily cumulative.**

- **Government Decision to Not Charge an Individual:** The motion as to this issue is **granted in part and denied in part**. It is **granted** with respect to any statements criticizing the Government's decision to charge or not charge a person in the Superseding Indictment, including the type of comparison that Defendant Taba appears to want to make by comparing himself to Ashraf Mofid and Leyla Nourian in light of the Government's decision to dismiss the charges against these two persons. Any suggestion (in the presence of the jury) that Defendant Taba is not guilty for the charged offenses, or it would be unfair to convict him when the charges against Ashraf Mofid and Leyla Nourian were dismissed, would be improper, irrelevant, misleading, and would confuse jurors, and is, therefore, **precluded**. *See United States v. Thompson*, 253 F.3d 700, 2001 WL 498430, at *16 (5th Cir. 2001). The court recognizes that not charging a person and dismissing the charges against a person are not the same; however, any references to the dismissal of Ashraf Mofid and Leyla Nourian for the purpose argued by Defendant Taba would be inappropriate for the reasons stated.

  The motion is otherwise **denied**, as the Government's decision to charge or not charge a person does not preclude Defendants from presenting evidence that: (1) someone other than them is responsible for the crime for which they are charged (shifting the blame); or (2) goes to the credibility or bias of a witness who received or expected to receive a potential benefit from the Government for their cooperation even in the absence of an agreement. Such evidence is distinguishable from that in *United States v. Thompson*, the case relied on by the Government. In *Thompson*, the Fifth Circuit affirmed the district court's decision to preclude closing argument regarding "[a]ny type of comparison during closing argument of the arguably criminal acts of immunized or uncharged witnesses to the alleged criminal acts of a Defendant" because "[j]ury nullification is not a 'right' belonging to the defendant." 2001 WL 498430, at *16 (citation omitted). Argument pointing out the unfairness of some persons not being charged or receiving reduced sentences for their participation in the same crime or another crime is not the same as evidence or argument that someone other than the defendant committed the offense. The latter argument focuses on whether the Government charged the wrong (innocent) person for a crime. *See Castillo v. Stephens*, 640 F. App'x 283, 294 (5th Cir. 2016) ("Pedrigone testified to the fact that Gonzales said he killed Garcia. It was a reasonable strategy to try to shift blame for Garcia's murder onto the accomplice witnesses.").

- **Consideration of Possible Sentencing Guidelines for Cooperating Witnesses:** The motion as to this issue is **granted in part and denied in part**. It is **granted** to the extent that the court will not permit any detailed discussion or evidence regarding the complexities of the Sentencing Guidelines or how a potential sentence would be calculated under the Sentencing Guidelines. The motion is **denied** to the extent that the court will allow

Order – Page 5

discussion regarding potential sentence ranges, statutory minimums and maximums, the effect on a potential sentence if the defense or Government moves for a sentence reduction under the Guidelines, applicable statutory factors, a plea agreement, or similar matters that do not involve Sentencing Guidelines complexities. In other words, evidence as to *any potential benefit* a witness reasonably could receive or anticipates receiving, regardless of whether any promises have been made or agreements have been reached, is permissible.

- **Evidence or Argument Regarding Witness Conduct Not Involving Dishonesty:** This motion is **carried**, as the court does not have sufficient information to rule on the issues raised by this motion. The Government asserts that one of its witnesses is an admitted illegal drug user, but her memory or ability to recall events was not affected by her drug use, and that another of its witnesses received deferred adjudication for a state theft offense, but this has yet to be established and could affect the court's rulings.[4] Additionally, Defendants raised the potential issue of whether either of these witnesses received or expected to receive a benefit for their testimony, which would be relevant to their credibility. Accordingly, testimony regarding these matters will need to be developed before the court can make a ruling, and this may need to be done outside the jury's presence.

- **Authentication of Records Pursuant to Federal Rule of Evidence 902:** The motion as to this issue is **denied without prejudice** as it is not an appropriate topic for a motion in limine. For any Government exhibits that the parties did not agree to preadmit, the issue of authenticity will be addressed during the course of the trial.

II. **Jamshid Noryian's Motion in Limine (Doc. 588)**

- **Gentlemen's Clubs/Strips Clubs:** The motion as to this issue is **granted.** Based on the Government's representations during the pretrial conference, the court is not convinced that evidence of or references to gentlemen's clubs or strip clubs is necessary for the Government to prove its case. Even if Jamshid Noryian used cash he obtained from tenants of gentlemen's clubs or strip clubs to pay kickbacks to physicians as alleged or met with physicians in such establishments to conduct illegal conduct, the probative value of any such evidence would be substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [and] misleading the jury" because of the strong feelings many people have about such establishments even if they are operating legally. Fed. R. Evid. 403. The court, therefore, agrees with Defendant Jamshid Noryian that this is a classic Rule 403 issue. Moreover, the court originally understood the Government to argue that cash kickbacks were paid to physicians at the strip clubs, but when defense counsel countered

---

[4] "[C]onviction" status for the purpose of Rule 609 is properly determined by federal law rather than state law[.]" *United States v. Hamilton*, 48 F.3d 149, 153 (5th Cir. 1995). In *United States v. Hamilton*, a case involving a witness who received deferred adjudication for a Texas theft offense, the Fifth Circuit explained that, when adjudication of guilt is deferred, there is no "conviction" *for purposes of Rule 609 of the Federal Rules of Evidence*, which permits a witness to be questioned about any felony conviction or any conviction of a crime involving "dishonesty or false statement, regardless of the punishment." *Id.* (emphasis added). From this, it is clear that deferred adjudication is not a conviction for purposes of Rule 609, however, whether the Government's witness received deferred adjudication and successfully completed deferred adjudication will need to be developed at trial though testimony.

**Order – Page 6**

that there was no evidence that cash was actually exchanged in a strip club, the Government did not refute this assertion.

- **Previous Trial:** The motion as to this issue is **denied as moot**, as the court informed the parties of its intent to explain to the voir dire panel that there was a prior trial that ended in a mistrial before it was completed such that no verdict of guilty or not guilty was reached because one of the main participants in the trial experienced a health issue. All parties indicated their agreement with proceeding in this fashion. Accordingly, references to the first trial are not prohibited, as long as the parties do not intend to rely on evidence in that trial to prove the charges or defenses in this case. The only exception to using evidence from the first trial is for impeachment purposes if a witness testifies inconsistently in this trial with his or her testimony from the first trial.

III. **Christopher Rydberg's Motion in Limine (Doc. 607)**

- **Speculation by Government Witnesses Regarding Defendants' Knowledge:** The motion as to this issue is **granted**. In accordance with Federal Rule of Evidence 602, the testimony of *all* witnesses who testify in the trial of this case, other than Rule 702 witnesses, must be based on personal knowledge, and the Government assured that its witnesses will all testify based on personal knowledge, not on speculation. Further, Rule 704 expressly precludes Rule 702 witnesses from "stating an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the charged or of a defense." Thus, **no Government or defense Rule 702 witness in this case may opine about any Defendant's mental state**. Further, as explained during the pretrial conference, the Government and its witnesses **must not reference or elicit testimony** such as "*everyone* knew or suspected" that Defendant Rydberg (or any trial Defendant) was engaging in illegal conduct that is based on speculation rather than personal knowledge. Further, the court will **not allow** any references to the **"mob,"** as any probative value of such evidence would be substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [and] misleading the jury[.]" Fed. R. Evid. 403. The Government is **directed** to advise all of their witnesses of this ruling by the court in advance of their testifying.

IV. **Michael Taba's Motion in Limine (Doc. 598)**

- **Physician's Standard of Care:** The motion as to this issue is **denied**. It is apparent from the pretrial conference and the parties' pretrial filings that the Government and the defense, or at least Defendant Taba, intend to rely on Rule 702 witness testimony regarding a physician's standard of care. The court will allow evidence in this regard, *as long as it is relevant to the issues in this case, and the Rule 702 witnesses do not express an opinion about any Defendant's mental state. Additionally, Rule 702's requirements will have to be satisfied before any Rule 702 witness is allowed to express an opinion in the presence of the jury*.

- **Government Reliance on Claims Data Summary Charts as Substitute for Actual Prescriptions:** The motion as to this issue is **carried** depending on how the testimony

Order – Page 7

regarding the summaries is developed. During the pretrial conference, Defendant Taba argued that the Government's summary charts may mislead the jury because, even if the data in the charts is accurate, the number of claims exceeds the number of prescriptions, making it appear that there were more prescriptions than those actually written. As the court indicated, it does not want any summary of evidence to be presented to the jury that is misleading, even though the Government represented that it is not using the summaries as a substitute for the actual prescriptions, which will also be in evidence. If the process for preparing the summaries and their contents is sufficiently explained by the Government, and the other requirements for Federal Rule of Evidence 1006 are satisfied, the court will allow the summary charts. If necessary, Defendant Taba will also be able to cross-examine the Government's witness who prepared the summaries to further clarify to the jury that the number of claims in the summaries does not equal the number of prescriptions, and that, because of the nature of compound drugs, claims for each substance making up a particular compound drug are submitted separately to the appropriate governmental agency for processing.

- **Speculation by Government Witnesses:** The ruling as to this motion is the same as that provided above for Defendant Rydberg's motion in limine.

- **Adverse Administrative Actions:** The motion as to this issue is **granted** as unopposed.

- **Prior Criminal Convictions:** The motion as to this issue is **granted** as unopposed by the Government *but only to the extent that the convictions of the persons that Defendant Taba intends to call at trial are more than ten years old.*

V. **Objections to Exhibits by the Government and Defendants:** Unless otherwise stated in this or subsequent orders, all written pretrial objections asserted by the Government and Defendants to trial exhibits are **carried** and will be addressed, as necessary, during the course of the trial as exhibits are offered to be admitted. *It will be the responsibility of each party to timely assert their various objections to exhibits during the trial at the appropriate time and obtain a ruling. The court will enter a separate order preadmitting all of the exhibits agreed to by the parties.*

VI. **Government's Objection to Defendant Taba's Rule 702 Witnesses (Doc. 605)**

The Government contends that, fifteen minutes before expiration of the deadline for filing objections to witnesses and exhibits, Defendant Taba filed a document containing short Rule 702 witness disclosures (Doc. 599) for four persons previously included in his Witness List and identified as Rule 702 witnesses—Dr. David Lewis, Dr. Neal Small, Dr. Daniel Buffington, and Bart Baggett—that do not conform with Federal Rule of Criminal Procedure 16. The Government asserts that it has not received any Rule 702 witness reports (created in preparation for litigation), the full bases for the opinions, including a summary of the principles and methods relied upon, or a complete summary of any opinions and conclusions these witnesses intend to offer at trial as required by Rule 16. The Government, therefore, contends that Defendant Taba should be precluded from presenting such testimony from any of these witnesses. Alternatively, if the court

does not strike their testimony, the Government contends that Defendant Taba should be ordered to disclose:

- Any [Rule 702 witness] reports created in preparation for litigation;
- A summary of the principles and methods the witness relied upon that
- relate to his testimony;
- A summary of the expected testimony from each witness, including
- opinions and conclusions reached;
- The process for selecting any handwriting samples that Bart Baggett used
- for comparison in conducting his analysis;
- Prior testimony for any witness not previously included on a CV or
- otherwise disclosed to the government; and
- Retention and payment information for all witnesses.

Doc. 605 at 3.

The Amended Scheduling Order (Doc. 540) includes a deadline of August 21, 2023, for the parties to file a summary for each Rule 702 witness that sets forth each Rule 702 witness's opinions and the bases for each opinion, but it does not require the exchange or disclosure of Rule 702 witness reports or the exchange of the other information sought by the Government. As explained during the pretrial conference, the court's requirement that the parties provide information it with regarding their respective Rule 702 witnesses is to assist it in performing its gate-keeping function, which is not the purpose of Rule 16 or the disclosures required by that rule.

Moreover, the Government has not shown that Defendant Taba was required to make disclosures under Rule 16. In the first trial, the Government filed a similar motion for leave to exclude Bart Baggett (Doc. 461) because Defendant Taba allegedly failed to comply with Rule 16 and give notice that Bart Baggett would be testifying as a Rule 702 witness (or a witness of any sort) in the case until 3 days before trial. The court denied that motion based on the following reasoning:

> Rule 16(d)(2)(C) provides: "[i]f a party fails to comply with this rule, the court may": order the noncompliant party to permit discovery, grant a continuance, prohibit the party from introducing undisclosed evidence; or "enter any order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2)(C) (emphasis added). The Government's reliance on Rule 16(d)(2)(C) is misplaced, as exclusion is not mandatory[.] . . . More importantly, the Government does not expressly contend that Defendant Taba failed to comply with Rule 16's expert disclosure require[ments]; nor has it shown or even explained why it believes that he was required to but failed to comply with Rule 16.
>
> Regarding a defendant's duty to provide expert disclosures, Rule 16(b)(1)(C) states that, "[a]t the government's request, the defendant must disclose to the government, in writing" certain information for expert testimony "that the defendant intends to use under Federal Rule of Evidence

Order – Page 9

> 702, 703, or 705 during the defendant's case-in-chief at trial, *if . . . the defendant requests disclosure under (a)(1)(G) and the government complies[.]*" Fed. R. Crim. P. 16(b)(1)(C) (emphasis added). The Government does not contend in its Motion for Leave or its proposed Objection and Motion to Exclude that Defendant Taba's reciprocal duty of disclosure under this rule was triggered because: (1) he requested disclosure under Rule 16(a)(1)(G); (2) the Government complied; and (3) the Government requested expert disclosures. *See id*.

Order dated Oct. 19, 2022 (Doc. 465) (emphasis added).

For essentially the same reasons, the court **overrules** the Government's current objection and request for an order excluding Defendant Taba's Rule 702 witnesses and its alternative request to require him to provide disclosures to the Government under Rule 16. Although the Government contends that it recently requested Defendant Taba to make disclosures under Rule 16, it has not shown that his duty to provide them under Rule 16(b)(1)(C) was triggered as a result of: (1) his requesting disclosure under Rule 16(a)(1)(G); and (2) the Government complying with such a request. *See id*. In light of the court's prior ruling regarding Rule 16 disclosures for Rule 702 witnesses, the Government should have been prepared to demonstrate that Rule 16's prerequisites for Defendant Taba's Rule 702 disclosures were satisfied. Having not done so, and because the trial is about to commence, the court also **denies** the Government's oral request to file a separate motion for purposes of attempting to show that Defendant Taba had a duty to provide them disclosures under Rule 16(b)(1)(C).

Even though the Government has not demonstrated that Defendant Taba was required to provide Rule 702 witness disclosures under Rule 16(b)(1)(C), the court will still order him to amend his disclosures to comply with the court's Amended Scheduling Order because his Designation of Experts (Doc. 599) filed on August 21, 2023, does not include all of the information ordered and needed by the undersigned to perform its gate-keeping function under Rule 702. Specifically, in many instances, only the general subject matter on which the witnesses intend to testify is identified without setting forth the specific opinions that each witness intends to provide. Additionally, the general bases for all identified and unidentified opinions for each witness are provided, but the specific bases for each opinion are not. Accordingly, by **September 18, 2023**, Defendant Taba **shall amend** his Rule 702 witness summaries for each Rule 702 witness that he intends to call at trial in his case-in-chief. The amended summaries for each witness **must** include: (1) each witness's specific opinions rather than the general subject matter about which the witness intends to testify; (2) the specific bases, reasons, and facts relied upon for each specific opinion; and (3) and the witness's qualifications to provide the opinions. The court is aware that Defendant Taba supplemented his Rule 702 disclosures on September 10, 2023; however, to avoid confusion by reference to multiple filings and documents, the court **orders him to file one amended document that complies with this order**. In a multi-defendant trial of this magnitude and complexity, it is simply too cumbersome and unwieldy for the court to look at and keep track of multiple documents on the same subject. This ruling **moots** any objection by the Government to Defendant Taba not complying with the court's Amended Scheduling Order. Any objection by the Government that Defendant Taba's Rule 702 witnesses do not satisfy Rule 702 is **carried** and will be addressed during the course of the trial.

## VII. Conclusion

*In light of these rulings, the parties shall not introduce evidence, argue, or elicit testimony regarding any matters that the court has determined should be excluded as a result of its rulings on the parties' motions in limine. If, during the course of the trial, any party believes that opposing counsel has "opened the door" to previously excluded evidence or evidence has been developed that supports a prior argument regarding the exclusion or admission of evidence, the party may ask to approach the bench, request the court to revisit the issue, and obtain a ruling from the court.*

**It is so ordered** this 11th day of September, 2023.

Sam A. Lindsay
United States District Judge